PRIEST *v.* MACK.

4-4763

Opinion delivered November 1, 1937.

*Ras Priest,* for appellants.

BAKER, J. The complaint was filed in the chancery court by the appellants against the county judge, county treasurer, and county board of election commissioners of Jackson county, Arkansas. The purpose of the suit was to enjoin the officers from operating under the county salary law, initiated in 1934, and to require or compel, by mandatory injunction, the election commissioners to certify the result of the election for or against Initiative Act No. 1, said to have been voted upon at the November election of 1936. The complaint was arranged in two counts.

In the first, it was alleged that the Initiative Act, fixing the salaries of the county officers of Jackson county was void, and, second, it was alleged that Initiative Act No. 1, said to have been voted upon and passed at the November election of 1936 was an act repealing the said void act. It was further alleged that the election

commissioners had not certified the election returns in regard to the repealing act.

The plaintiffs, appellants here, sued in the aforesaid suit as resident taxpayers and qualified electors of the county and they alleged that they had an actionable interest in the proper application and distribution of the tax money or funds of the county and that they were seeking an observance of all constitutional and legal provisions in regard thereto.

Among other things it was alleged that the county treasurer had $457.73 in money in the treasury belonging to Lee Reid as tax collector; that he had $672.38 in money and $538 in county warrants of Jackson county belonging to W. H. Reid, circuit clerk, and $110.59 in money and $272.80 in county warrants, the property of Fred Ball, county and probate clerk; $316.22 in money, the property of A. W. Jackson, the county treasurer; that these funds, or several items, were in the hands or custody of the county treasurer, arising out of the initiative salary act, and that the several sums had been deposited or paid over to the treasurer in accordance with the terms, conditions and requirements of the said initiative act.

In the trial court, the first count of the complaint was disposed of upon a general demurrer. The elaborate brief furnished us by appellants, printed in small type, with closely placed lines, is largely devoted to a discussion and argument that the electors of the counties may not proceed under Amendment No. 7 to the Constitution to initiate salary acts.

This case was argued orally, and it is conceded by appellants that unless we are willing to reconsider and overrule the case of *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S. W. (2d) 779, the principal contention of this suit must fail.

The arguments presented are in a large measure the same as were presented in the *Dozier* v. *Ragsdale* case, *supra,* and in *Tindall* v. *Searan,* 192 Ark. 173, 90 S. W. (2d) 476. Of course, there is considerable elaboration. There are dozens of citations, some of which appear to

be applicable upon their face, but, after reading this most elaborate brief and having given full consideration to all these matters, we conclude it offers nothing that was not fully considered and disposed of in the cases just cited.

Let it suffice to say that the people of the state of Arkansas adopted Amendment No. 7. It became a part of the state's Constitution upon its adoption; it fits into that organic body, displacing whatever may be in conflict with or repugnant to the provisions of the amendment; that it is self-executing. The purpose of the court in the case of *Dozier* v. *Ragsdale, supra,* in accordance with its long and well considered policies, was to make effective the will of the people as declared in the said amendment. This was done at that time and no occasion has arisen since then to justify, in any measure, a reconsideration of what was said in that case. Because the opinion of this court is fully declared in that announcement, it would be a labor without justification to attempt a repetition at this time. There has been brought us in this case, as presented here, several questions which have been argued with great vigor and supported by numerous citations of authorities. Some of these are to the effect that the initiated act of Jackson county has provisions in violation of § 11, art. XVI, of the Constitution of 1874, or, for a diversion of funds. For instance, officers are required to collect the original fees and turn them into the treasury, and if any portion of the said fees shall remain, after payment of the salaries of county officers, such funds shall then become county general funds and be so held by the county treasurer.

It is also urged that where salaries of county officers are paid in part by the state that such officers are required to turn these into the county treasurer and to surrender any claim thereto. We appreciate the significance of this argument, but at this time all these questions are moot propositions, unnecessary to be considered, or to be passed upon by us. Let us suggest that as to these questions there is no real merit in the proposition stated in appellant's complaint to the effect that

there was, as before set out, $457.73 in money, the property of Lee Reid, the tax collector, in the county treasury, because Reid is not suing for this money, nor is W. H. Reid, the circuit clerk, suing for what is alleged to belong to him, nor is J. Fred Ball suing for any sum alleged to belong to him. These taxpayers do not purport to represent any school district, the funds of which had been taken and converted into county general funds, nor do they represent any officer in whose name they could sue to recover such official's salary.

This is not a new proposition urged here for the first time. The same matter was considered in the case of *Blocker* v. *Sewell,* 189 Ark. 924, 75 S. W. (2d) 658. We said there: "The proposed initiative act is criticized, and it is alleged that in its operation it will result in a diversion of taxes, contrary to constitutional provisions. That may or may not be true, but that question is not before us at this time for several reasons. The first is that the proposed act may not be adopted by Miller county. If it should be adopted and objections then be raised, and a case be presented upon the proposition as to a wrongful diversion of funds, that question will then be determined."

What we said in the case of *Blocker* v. *Sewell, supra,* and what we now repeat must apprise anyone of our position. We are not anticipating the rights of any particular officer or school district, and, at this time, issuing a declaratory opinion in regard thereto. Appellants here show no real interest in such matters. In fact, they do not show that any actual fund is involved. They admit by oral argument that their effort to have an initiative act declared unconstitutional and void, or in the alternative have it declared repealed at the alleged election said to have been held in November of 1936 and thereby force officers to return to whatever fee system prevailed in the county before the county began operating under the initiated act is the purpose of the suit. It is not shown by the complaint, nor by oral argument, or in the brief, how one or a few taxpayers might, by a proceeding purporting to be a taxpayer's suit, proceed against,

or in opposition to the financial or pecuniary interest of the taxpayers generally, and yet such proceedings be a representative or class suit. It is pleaded and argued in the brief that there are substantial savings to taxpayers under the regime of the initiated act, and there does not appear to be any corresponding benefit to the public in striking down such act. No public interest is shown. The proceeding is, therefore, individual, and not representative, notwithstanding the alleged beneficent design.

As to the second count of the complaint, it is urged that it was disposed of in the trial court upon a motion to dismiss, which appellants say, amounted to a special demurrer and that the proper remedy would have been, at most, a motion to strike rather than any form of demurrer. Whatever the motion was, it is not abstracted in full, and we, therefore, presume that, by whatever name it was called, the merits thereof were considered and disposed of by the trial court. We have frequently held that the effective contents of a pleading, and not a name given it by the pleader, will determine whether the matter therein is entitled to consideration. *Montague* v. *Craddock*, 128 Ark. 59, 64, 193 S. W. 268.

In this second count the appellants allege that in the election held in November, 1936, Initiative Act No. 1 of 1936 was presented, the purport of which was to repeal Initiated Act No. 2 of 1934, which was known as the County Salary Act. The purport of appellants' pleading is that the alleged Initiated Act No. 1 was presented to the county clerk, who upon consideration, declared the petition sufficient and certified the matter to the election commissioners; that the election commissioners did not put this proposition upon the ballot. But it is shown that some electors at different precincts in the county voted for and against this matter. The election commissioners, though some votes were certified to them by the election officers, did not certify such result. The prayer was for a mandatory injunction to compel the election commissioners, who were also joined as parties defendant, to certify the result of the alleged election,

which it must be conceded, they did not hold, or author-ize the election judges and clerks to hold.

It is urged very strongly that the duty of these election commissioners was purely ministerial; that the chancery court should have determined from the pleadings that an actual election was held upon Initiated Act No. 1 and that the result thereof should have been declared by these officers and that their conduct in that respect could be controlled by the chancery court.

Without attempting to define what may be an election contest, we are willing to say that such a proceeding, that is an election contest, is not necessarily a matter of determining whether one candidate, or matter submitted to electors shall have received more or less votes than another. Such contests may go far enough to determine whether or not an election was actually held, and, if so, what issues were properly or legally presented for consideration of the electors. To whatever extent these propositions, the legality of which might be questioned and might have to be determined by a trial court, if they are in the ultimate conclusion and result election contests, we have no hesitancy in saying that courts of equity do not now and have never had jurisdiction to act thereon, since the adoption of the Constitution of 1874. *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; *Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. (2d) 68.

No occasion arises for a discussion of these principles, nor will it be at all helpful to paraphrase opinions of this court which have long since disposed of such issues. The foregoing citations are conclusive, and the curious may consult them and authorities there cited.

It follows the trial court was correct. Decree affirmed.