BUTLER *v.* DEMOCRATIC STATE COMMITTEE.

4-6782                                          160 S. W. 2d 494

Opinion delivered April 6, 1942.

16

*Coleman, Mann, McCulloch & Goodwin,* for appellant.

*Walter L. Pope* and *Owens, Ehrman & McHaney,* for appellee.

*Ross Mathis,* for intervener.

SMITH, J. At the general election held in 1936, Amendment to the Constitution, now bearing the number 23, was adopted. It reads as follows:

"Section 1. A Board to be known as 'The Board of Apportionment,' consisting of the Governor (who shall be chairman), the Secretary of State and the Attorney General, is hereby created, and it shall be its imperative duty to make apportionment of representatives and senators in accordance with the provisions hereof; the action of a majority in each instance shall be deemed the action of said Board.

"Section 2. The House of Representatives shall consist of one hundred members and each county existing at the time of any apportionment shall have at least one representative; the remaining members shall be equally distributed (as nearly as practicable) among the more populous counties of the state, in accordance with a ratio to be determined by the population of said counties as shown by the federal census next preceding any apportionment hereunder.

"Section 3. The Senate shall consist of thirty-five members. Senatorial districts shall at all times consist of contiguous territory, and no county shall be divided in the formation of such districts. 'The Board of Apportionment' hereby created shall, from time to time, divide the state into convenient senatorial districts in such manner as that the Senate shall be based upon the inhabitants of the state, each senator representing, as nearly as practicable, an equal number thereof; each district shall have at least one senator.

"Section 4. The Board shall make the first apportionment hereunder within ninety days from January 1,

1937; thereafter, on or before February 1 immediately following each federal census, said Board shall reapportion the state for both representatives and senators, and in each instance said Board shall file its report with the Secretary of State, setting forth: (a) the basis of population adopted for representatives; (b) the basis for senators; (c) the number of representatives assigned to each county; (d) the counties comprising each senatorial district and the number of senators assigned to each, whereupon, after thirty days from such filing date, the apportionment thus made shall become effective unless proceedings for revision be instituted in the Supreme Court within said period.

"Section 5. Original jurisdiction (to be exercised on application of any citizen and taxpayer) is hereby vested in the Supreme Court of the state: (a) to compel by mandamus or otherwise the Board to perform its duties as here directed, and (b) to revise any arbitrary action of or abuse of discretion by the Board in making any such apportionment; provided, any such application for revision shall be filed with said court within thirty days after the filing of the report of apportionment by said Board with the Secretary of State; if revised by the court, a certified copy of its judgment shall be by the clerk thereof forthwith transmitted to the Secretary of State, and thereupon be and become a substitute for the apportionment made by the Board.

"Section 6. At the next general election for state and county officers ensuing after any such apportionment, senators and representatives shall be elected in accordance therewith and their respective terms of office shall begin on January 1 next following. At the first regular session succeeding any apportionment so made, the Senate shall be divided into two classes by lot, eighteen of whom shall serve for a period of two years and the remaining seventeen for four years, after which all shall be elected for four years until the next reapportionment hereunder."

Appellant, Butler, filed in the Pulaski circuit court a suit against the members of the Democratic State

Committee in their collective capacity, which reads as follows:

"Petition for a Writ of Mandamus.

"The petitioner respectfully shows to the court that he is a member of the Democratic Party in the state of Arkansas and is a qualified elector of St. Francis county.

"On March 30, 1937, the Board of Apportionment of the state of Arkansas submitted its report to the Secretary of State in compliance with the requirements of Amendment No. 23 to the Constitution of Arkansas, a certified copy of which report is attached hereto as a part hereof.

"On January 4, 1941, the federal bureau of the census promulgated the final population figures of the 1940 census in Arkansas by counties.

"On January 21, 1941, the Board of Apportionment submitted its report to the Secretary of State in compliance with Amendment No. 23 based on the census of 1940, a certified copy of which is attached hereto as a part hereof.

"The petitioner is an elector in senatorial district No. 33 as described in the report of the Board of Apportionment of January 21, 1941.

"W. L. Ward was duly elected senator from the senatorial district composed of St. Francis and Lee counties at the general election held in November, 1940, and the defendants claim that he will be a member of the Senate in 1943 by virtue of such election.

"The first general election for state and county officers following the new apportionment will be held in November of this year. The Democratic Party will hold a primary election on the 28th day of July, 1942, to select party candidates to run in such general election. The petitioner proposes to run in the primary election as a candidate for the office of state senator, and to this end he tendered his party loyalty pledge to the Democratic State Committee in compliance with § 37 of the rules of the party. The committee wrongfully rejected

his pledge and refused to permit him to file it. The petitioner is without remedy except by mandamus.

"Wherefore the petitioner prays for a writ of mandamus directed to the Democratic State Committee commanding it to accept and file his party loyalty pledge as the rules of the Democratic Party require."

The relief prayed was denied, from which order and judgment is this appeal.

This suit is predicated upon the assumption and allegation that the Board of Apportionment, created by the amendment, performed the duties imposed upon it by the amendment, by making an apportionment of representation in both the House of Representatives and the Senate in 1937, but that the Board failed to discharge its duties in this behalf after the 1940 census had been taken.

An intervention has been filed by a citizen of Woodruff county, in which it was prayed that mandamus be granted compelling the Board of Apportionment to function and to perform the duties imposed upon it by the amendment by redistricting the state for senatorial representation.

Construction of the amendment is, of course, required to dispose of these contentions; and we proceed with its construction. The purpose of the amendment was, of course, to secure equal and fair representation in the General Assembly upon the basis of proportionate population. It was recognized that a census of the state's population would be taken by the federal government every ten years, and it was contemplated and required that the adjustment or apportionment of representation should be based upon this census, and it was made the imperative duty of the Board of Apportionment to make apportionment of representatives and senators after the taking of each federal census. No discretion was vested in the Board as to whether this duty should be performed. The duty is mandatory, and by § 5 of the amendment original jurisdiction was vested in the Supreme Court to compel, by mandamus or otherwise, the Board to perform this duty. It is further provided

by § 5 of the amendment that, if the Board, in the performance of the duties imposed by the amendment, should act arbitrarily, or abuse its discretion, application for a review of that action might be made to the Supreme Court within thirty days after the Board had filed its apportionment report with the Secretary of State.

In the discharge of these duties the Board made and filed a report of its proceedings with the Secretary of State under date of January 21, 1941. This report assigned one representative to each of certain named counties, two representatives to certain other counties, three representatives to each of four named counties, and seven representatives to one county. The report divided the state into thirty-four senatorial districts, and named the counties composing each district, and gave to each district one senator, except one district, which was given two senators. The report concludes with the statement that ''The Board in submitting this reapportionment report, after giving the matter careful consideration, was of the opinion that the above was the most satisfactory solution and that it complies with the provisions of Amendment No. 23 to the Constitution of the state of Arkansas.''

The result of this report is that it is identical with the apportionment of both representatives and senators made in 1937.

The recital of these facts disposes of the prayer of the intervention that the Board be required to make a reapportionment. It has done so. The report is based upon the finding that there had been no such change or shift in the population of the respective counties of the state as to require a redistribution of representation either in the House or Senate, and the apportionment made in 1937 was permitted to stand without change.

Suit was filed by citizens of certain counties, in which it was alleged that this report was arbitrary, in the apportionment of representation in the House of Representatives in that it failed to take account of the shifts in population shown by the 1940 census.

In the exercise of the original jurisdiction conferred on the Supreme Court by the amendment, these suits were heard and the finding was made that the report of the Board, as filed with the Secretary of State, was arbitrary, in that proper account had not been taken of the relatively greater increase of population in the counties of Mississippi and Poinsett, and each of those counties was awarded an additional representative, at the expense of Union and Lonoke counties, whose representation in the House, under the Board's report, was found to be relatively greater than it should have been. *Shaw* v. *Adkins, Governor*, 202 Ark. 856, 153 S. W. 2d 415.

After the Board of Apportionment had made its report on January 21, 1941, the presiding officer of the Senate announced that on February 13, 1941, he would divide the Senate into two groups, one to be composed of eighteen senators who would thereafter serve for two years, and another group of seventeen senators to serve for four years. Suit was brought to enjoin the presiding officer of the Senate from taking that action, and an injunction was granted, which decree was affirmed on the appeal to this court. *Bailey, Lieutenant Governor,* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176, 149 S. W. 2d 573.

We are convinced that holding is correct, and we reaffirm it; but, in so holding, it was inadvertently stated that there had been no reapportionment making division of senators into new groups necessary to determine their respective periods of service. There was a reapportionment, and a report thereof was filed with the Secretary of State, and a copy of this report, of which we take judicial knowledge, has been filed as an exhibit to appellant's petition for mandamus. It would have been more accurate in that opinion to have said, as, indeed, the fact is, that no change had been made in the previous apportionment. The old — the first — apportionment, made in 1937, was adopted as the reapportionment under the 1940 census, and this was what was intended when it was said that no new apportionment had been made.

But the fact is that the Board of Apportionment did make a reapportionment under the 1940 census.

This apportionment was found to be arbitrary, within the meaning of § 5 of the amendment, in so far as it related to the distribution of representation in the House of Representatives, and that action was reviewed and reversed as above stated. But no complaint was made as to the reapportionment of senatorial representation.

The insistence of appellant is that the very genius of Amendment No. 23 is that the senatorial body should be entirely reorganized on the basis of a new apportionment of senatorial districts following each federal census, and that no member of the old Senate, by virtue of such membership, would be a member of the reorganized Senate, even though the term of office for which he was elected had not expired, and that a new senatorial body, which is to come into existence every ten years under the operation of Amendment No. 23, is to be recruited from new senatorial districts created by successive apportionments.

This would be true had it been found by the Board of Apportionment that shifts in population shown by the 1940 census required a new division of the state into senatorial districts to equalize representation in that body in proportion to the population of the various counties as shown by that census. But the amendment does not require a geographical change in the senatorial districts after each census. The amendment does require that this shall be done if shifting population makes that action necessary to afford just, equitable and equal representation. But the Board of Apportionment found that action was not required for that purpose, and that finding was not questioned except in the case of representation in the House of Representatives.

If any change in the geographical boundaries of any of the senatorial districts is made, an entirely new Senate must be elected, in which event the newly-elected senators would be divided by lot into two classes, one to serve for two years, the remainder for four years, as required by § 6 of the amendment. This geographical change in the boundaries of the senatorial districts must be made after each federal census, if it be found by the Board of

Apportionment, as an original proposition, or by this court on appeal from the action or inaction of that Board, that such rearrangement or reapportionment is necessary to afford the just and proportionate representation which the amendment contemplates and requires.

But if it be found, as the Board did find, that no geographical changes were necessary to equalize the representation, then no necessity existed under the amendment to make changes in the boundaries of the senatorial districts, in which event all senators would serve for the respective terms for which they had been elected. The length of these terms is fixed by § 3 of art. 5 of the Constitution, at four years, and this provision of the Constitution need not be ignored unless a change is required in the boundaries of senatorial districts to equalize representation so that an entirely new Senate must be elected. In other words, the amendment requires a reapportionment after each census, but to accomplish that result it is not required that the state be redivided, unless that action is found necessary to accord proportionate representation. If in making the reapportionment this redivision of the state into senatorial districts is found necessary, an entirely new Senate must be elected, whose members shall, upon convening, divide themselves into two classes as required by § 6 of the amendment.

These new districts might continue indefinitely, and would so continue unless population shifts require geographical changes to afford proportionate representation to the various counties. Now, the amendment requires the Board of Apportionment to ascertain this fact after each census, and if population shifts require a rearrangement geographically to afford proportionate representation, such changes must be made. But if population shifts do not require this rearrangement or reapportionment to afford ratable and just representation, then no necessity exists to change geographical boundaries, and the districts would remain unchanged.

As has already been said, the Board of Apportionment, by its report of January 21, 1941, found that the necessity did not exist to make geographical changes to

afford the proportionate representation required by the amendment, and, therefore, none was made, and that is what is meant in the opinion in the case of *Bailey* v. *Abington, supra,* when it was said that no apportionment was made. An apportionment had been made, but no geographical changes in the boundaries of the various senatorial districts was made, and there was, therefore, no occasion for the senators to draw for length of terms of office.

It follows, from what has been said, that the judgment of the circuit court denying mandamus must be affirmed; and the intervention of the citizen from Woodruff county will be dismissed.

GRIFFIN SMITH, C. J., (dissenting). The view expressed March 3, 1941, in my concurring opinion in the Bailey-Abington case: that there had been reapportionment—is now accepted by the court. Therefore, for purposes of this dissent, it is unnecessary to go back of § 6 of amendment 23 where it is provided that at the next general election following an apportionment, senators and representatives shall be elected in accordance with such apportionment.

The majority opinion reads into the mandate a condition I have been unable to discover, the effect of which is that "senators *shall not be elected* unless the board, in making its report, rearranges a district."

The "next general election" following the apportionment now conceded to have been made January 21, 1941, will be held November 3, 1942; and, let it be repeated, the amendment says that at such election *"senators and representatives shall be elected."*

The drawing for long and short terms takes place *"at the first regular session succeeding any apportionment so made."*

Selection of eighteen members for two years, and seventeen for four years, is consummated "by lot."

I cannot see that art. 5, § 3, of the constitution, has anything to do with this controversy. The amendment expressly fixes the period of tenure. Under accepted

rules of construction, the last statutory or constitutional expression supersedes prior provisions. Judicial construction is necessary only where there is indefiniteness or ambiguity. Here there is nothing to construe: eighteen senators from thirty-five elected serve two years and seventeen serve four years, ". . . after which all shall be elected for four years until the next reapportionment hereunder."

We have the anomalous situation of reapportionment, express language directing election of senators "at the next general election," a command that at the session in 1943 division as to long and short terms be made, and a decision by the Supreme Court that the amendment means nothing of the kind because, *ergo*, the constitution of 1874 still controls. By *construction* terms of office may not expire in such manner as to permit § 6 to become operative.

Because all of my colleagues make the majority opinion I deplore the necessity of disavowing the result; yet, in spite of disinclination to become a conspicuous minority, my convictions are so deep-seated regarding the amendment's meaning that I would be false to official responsibility in yielding to the easier way and remaining noncommittal.

The majority's argument that in the absence of district changes there is no necessity for election of all senators, and that the people "did not so intend," is not without superficial plausibility. The fallacy occurs, however, in assuming an intent not expressed in the amendment and not implied: one which, upon consideration, conflicts with what may be termed the genius of the plan. The opinion assumes the amendment to have been adopted as a convenience to holdover senators and finds unjust the requirement that all stand for reëlection, or that they give way to other aspirants. But the fact cannot be blotted out that all senators serve by virtue of the popular will; and by amendment to the fundamental law the electorate has reserved the right to vote upon full membership at stated decennial periods. Whether this be wise or witless is not for us. Perhaps the public

business would be better served, legislatively, by having holdover senators who are familiar with procedure. The longer an acceptable officer serves, the more competent he or she becomes.

The issue here is not one of personal preference. It involves a design to relieve against an intolerable condition respecting apportionment. I fear the amendment has been emasculated.