Pickens *v.* The Board of Apportionment.

4-9781                                246 S. W. 2d 556

Opinion delivered February 25, 1952.

*Byron Goodson,* for petitioner.

*Ike Murry,* Attorney General and *Cleveland Holland,* Assistant Attorney General, for respondent.

Griffin Smith, Chief Justice.    In a cause styled *Smith* v. *The Board of Apportionment,* 219 Ark. 611, 243 S. W. 2d 755, the directive was that Pulaski county, or the senatorial district of which it became a part, be given at least three senators. This was thought necessary, as the opinion reflects, because the 1950 census disclosed a county population of 196,685, the population of the state was 1,909,511, and the Thirteenth district embracing Pulaski county alone was under-represented from a numerical standpoint by a percentage equation of 80.26.

Amendment No. 23 to the Constitution requires the Board to divide the state into convenient senatorial districts "in such manner as that the Senate shall be based

upon the inhabitants of the state, each Senator representing, as nearly as practicable, an equal number thereof, [and] each district shall have at least one Senator." Primary requisites are that the Senate shall be composed of 35 members and that no county shall be divided.

In the case decided in December it was found that when 1,909,511 is divided by 35 the nearest whole number is 54,557; hence the ideal district, considered from a mathematical standpoint only, would have a population of 54,557. But the Amendment very wisely provides that convenience be given consideration, and that districts be composed of contiguous counties. A statement in our former opinion is that the Supreme Court has power to perform the work involved in revision. But it was also said that because of the Board's constitutionally-imposed duties—a merger of legislative and administrative functions—the controversy should be remanded to allow that agency to consummate the reapportionment process—a consequential necessity when the Thirteenth district was given a third Senator. The record showed inequalities other than those complained of by the two petitioners.

A day after the Court's decision was handed down the Board met and made certain changes affecting western and southwestern counties or districts. Under the reapportionment of 1937, still effective as to district constituency in 1951, the Fifth district was composed of Scott, Polk, and Logan counties, with a combined population of 44,499 in 1950. By the Board's action of December 4th Logan was taken from this district and put with Yell and Pope to form the Eighth district, with a population of 57,608. Montgomery was taken from the Ninth district and combined with Scott, Polk, Sevier, and Little River, to comprise a new Fifth district with a population of 54,902—ideal from a numerical standpoint, but objectionable to petitioners in this case for other reasons.

It was alleged that the distance from northern to southern boundaries of the district thus created was more than 150 miles, and that Howard county's northwestern corner was less than ten miles from Oklahoma—

a territorial impediment that, from a practical standpoint, cut the district into separate areas. Howard county, formerly in the Sixth district with Sevier and Little River, was merged with Pike and Hempstead to form the Ninth district. No other changes were made except in the Thirteenth district where the mandate for three senators was followed. Effect of the Board's action was to reduce the number of districts from 34 to 33.

Section 5 of Amendment 23 allows 30 days for appeals from the Board. The petition before us was filed in a timely manner; but the Court, sensitive to a state-wide concern and hoping for constructive suggestions, announced January 21st that interested persons would be given until February 11th to file briefs. This necessarily meant that any proposed regrouping not inconsistent with the Court's previous opinion would be considered. With the exception of the Attorney General's brief none has been received.

When the cause was remanded percentage discrepancies were pointed to, the greatest (other than the old Thirteenth district) being in the Thirtieth—Mississippi county alone. The phenomenal growth of this agriculturally-rich county has been such that when the 1950 census figures were released the population had increased to 82,375; and, senatorially, it was under-represented 50.99%.

The Twenty-third district came next — Jefferson county. There the population was 76,075, and the under-representation was 39.44%.

The combined population of Garland and Saline counties, the Fourteenth district, was 70,918, an under-representation of 29.99%.

The Sixth district—Howard, Sevier, and Little River counties—with a population of 37,325, was over-represented 31.59%.

The Eighth district—Pope and Yell counties—with an enumeration of 37,348, was over-represented 31.54%.

Other districts were over- or under-represented considerably more than 20%.

Through integration of counties into districts which, on paper, appears wholly appropriate, the mathematical differential can be cut to a point where the variant will in no instance be greater than 10%, plus a slight fraction. Some districts would be so near 54,557 that the difference would be but .30%. Several would be over or under by less than 1%, and half a dozen others would not exceed 3%. But to do this the number of districts would have to be reduced to 21, and boundary changes in practically all of the existing districts would be brought about. It could logically be urged that such a radical reduction in numbers, resulting in the assignment of two Senators to each of nine districts, three to one, four to one, and one to each of the other ten, would conform to the constitutional idea of approximate mathematical equality.

We are not unmindful of the Board's difficulties in redistricting. No doubt the members who concurred in the December 4th result believed that when all phases of the problem were considered the disparity in population between the two extremes was not sufficient to justify inconveniences that would necessarily attend complete reassignment of counties to districts. Something of the same problem confronts the Court. It is not inappropriate to say that not one of the judges is entirely satisfied with all district arrangements; but it is imperative that the matter be now disposed of, hence individual preferences must yield to necessity.

Although our opinions differ, fundamentals have not been sacrificed. The first essential is that Mississippi county's Thirtieth district is under-represented 50.99%. In the Clyde E. Smith case involving Pulaski county's Thirteenth district we found it necessary to say that under-representation of 80.26% required action by the Board or this Court; but even with three Senators the Pulaski county district will have 33,014 people who are not represented in mathematical proportions. Believing, as we earnestly do, that the purpose of Amendment 23 was to correct inequalities such as exist in the Thirtieth district, and in other districts in lesser degrees, we

have concluded that the most practical means of meeting the difficulty is to merge Mississippi, Craighead, and Poinsett counties into a new district and assign to it three Senators. Each will represent 57,433 persons from a theoretical point of view; and even then the under-representation will be 5.28%.

The next unreasonable digression in the present setup is Jefferson county's Twenty-third district where, as has been shown, the population is 76,075. Unitization of Lincoln and Jefferson and the assignment of two Senators to the combined population of 93,154 reduces the under-representation of Jefferson from 39.44% to an over-representation of 14.63% for the new district. In the past Lincoln has been with Desha to form the old Twenty-fifth district with a population of 42,234.

The next topheavy district is the Fourteenth—Garland and Saline. The enumeration of 70,918 results in under-representation of 29.99%. An improved status is achieved by combining Clark and Hot Spring with Garland and Saline. The four-county unit has a population of 116,097. With two Senators now assigned the under-representation is 6.40%.

Other districts where the population factor is such that necessity for adjustments is shown by statistical data alone have been mentioned. In measurably correcting these conspicuous population factors that show over or under representation the shift of a single county may require realignment affecting large areas. One paper plan worked on for hours gave hopeful indications that it provided the sought-for solvent. County groupings were desirable, the number of districts was not far below the existing 34, and population percentages were readily acceptable; but, unfortunately, a recapitulation showed but 34 Senators as against the Amendment's requirement that there be 35. Other exploratory drawings, computations, groupings, and considerations of convenience were, for one reason or another, discarded until the plan shown by the accompanying chart found passing favor with a majority of the judges. It leaves intact ten

of the existing districts, the first four having their same identifying numbers. In the other six of the unchanged ten, new district numbers have been assigned without other alterations.

The greatest percentage factor is in the new Twenty-first district—Drew and Desha counties—where the combined population is 43,114 and the over-representation is 20.97%. This, however, is but eight tenths of one percent greater than the 20.17% deficiency of the old Thirteenth district (Pulaski county) after a third Senator was added, and inferentially such a departure was sanctioned in our opinion of December 3d where the mandate was that at least one additional Senator should be allotted to the population of 196,685.

It is therefore directed that reapportionment be according to the following plan:

| District | Counties | Population | Pct'g Variant | Senators |
|---|---|---|---|---|
| 1 | Benton, Carroll | 51,320 | 5.93-o. | 1 |
| 2 | Washington, Madison | 61,713 | 13.13-u. | 1 |
| 3 | Crawford, Franklin, Johnson | 51,223 | 6.11-o. | 1 |
| 4 | Sebastian | 64,202 | 17.68-u. | 1 |
| 5 | Logan, Scott, Yell, Montgomery | 51,054 | 6.42-o. | 1 |
| 6 | Polk, Howard, Sevier, Little River | 51,507 | 5.59-o. | 1 |
| 7. | Pike, Hempstead, Nevada | 49,893 | 8.55-o. | 1 |
| 8 | Miller, Lafayette | 45,817 | 16.02-o. | 1 |
| 9 | Boone, Marion, Baxter, Newton, Searcy | 55,661 | 2.02-u. | 1 |
| 10 | Pope, Conway, Perry | 47,406 | 13.11-o. | 1 |
| 11 | Garland, Saline, Hot Spring, Clark | 116,097 | 6.40-u. | 2 |
| 12 | Ouachita, Columbia | 61,821 | 13.31-u. | 1 |
| 13 | Union | 49,686 | 8.93-o. | 1 |
| 14 | Stone, Van Buren, Cleburne, Faulkner | 54,125 | .79-o. | 1 |
| 15 | Pulaski | 196,685 | 20.17-u. | 3 |
| 16 | Grant, Dallas, Cleveland, Calhoun, Bradley | 53,515 | 1.91-o. | 1 |

| District | Counties | Population | Pct'g Variant | Senators |
|:---:|:---|:---:|:---:|:---:|
| 17 | Fulton, Randolph, Sharp, Lawrence | 55,471 | 1.68-u. | 1 |
| 18 | Izard, Independence, Jackson | 59,353 | 8.79-u. | 1 |
| 19 | White, Woodruff, Lonoke, Prairie | 98,043 | 10.15-o. | 2 |
| 20 | Jefferson, Lincoln | 93,154 | 14.63-o. | 2 |
| 21 | Drew, Desha | 43,114 | 20.97-o. | 1 |
| 22 | Ashley, Chicot | 47,966 | 12.08-o. | 1 |
| 23 | Clay, Greene | 55,823 | 2.32-u. | 1 |
| 24 | Craighead, Mississippi, Poinsett | 172,299 | 5.28-u. | 3 |
| 25 | Cross, Crittenden, St. Francis | 108,782 | .30-o. | 2 |
| 26 | Monroe, Lee, Arkansas, Phillips | 113,781 | 4.28-u. | 2 |

In the preceding list, under "pct'g variant" the letter "u" or "o" follows each listing. The "o" represents over-representation, and the "u" under-representation.

A chart is attached for convenient reference.

ARKANSAS

The Clerk of this Court is directed to transmit to the Secretary of State, at once, a certified copy of this judgment, to become a substitute for the apportionment made by the Board December 4th, 1951.

Ed. F. McFaddin, Justice (concurring). My dissent in *Smith* v. *Board of Apportionment*, 219 Ark. 611, 243 S. W. 2d 755, is a matter of record. I dissented in that case because: (1) this Court, in overruling the work of the Board of Apportionment, was allowing population to be the sole factor in Senatorial Redistricting; and (2) the Supreme Court was refusing to accomplish redistricting in the case.

The opinion in *Smith* v. *Board of Apportionment* was delivered on December 3, 1951. The next day, the Board of Apportionment met; and, in accordance with the opinion of this Court, made an apportionment which gave Pulaski County three (3) Senators. But, in so doing, the Board created some Senatorial Districts composed of Counties that had antagonistic commercial or agricultural interests; and in some instances, Senatorial Districts were composed of Counties that were without adequate transportation accessibility. It was against that December 4th apportionment that the present suit was filed; and in it, the petitioners have offered several other plans for the grouping of Counties into Senatorial Districts.

Finally, this Court in the present opinion, has made an apportionment just as I insisted that this Court should have done in *Smith* v. *Board of Apportionment*. The result of this Court's action is the present opinion, in which the Court—as I see it—has considered the six factors which I mentioned in my dissenting opinion in the Smith case.

At all events, I believe that the Senatorial Districts set up by the present opinion are as fair as can be devised, and are certainly better than any plan that has been heretofore offered. The time for filing for places in the new Senatorial Districts is limited; so I gladly concur with the present majority opinion, in order to settle the uncertainty that has existed.