DOWELL *v.* SCHOOL DISTRICT No. 1, BOONE COUNTY.

4-9832                                                250 S. W. 2d 127

Opinion delivered June 30, 1952.

Appellant *Pro Se.*

*Ben C. Henley* and *J. Smith Henley,* for appellee.

ED. F. McFADDIN, Justice. This is a suit by a tax-payer and two patrons of School District No. 1 of Boone County (hereinafter called "School District"); and is an attack on various transactions of the School District.

In November, 1951, Dowell filed this suit against the School District, two of the Directors, the School Superintendent and the Sureties on the bond of the School Superintendent. The complaint made the allegations hereinafter discussed. Later Burnett and Walker, each a patron of the School District, intervened and joined Dowell in his complaint. Although none of the plaintiffs is an attorney, the Court permitted each plaintiff to represent himself; and the learned Chancellor was most patient in the entire proceeding. A demurrer was sustained to many of the allegations of the complaints; but there was a trial on the merits as to the remaining portions of the case. The Chancery Court did not grant the plaintiffs all the relief they desired, so they have appealed. For convenience, we will refer to the parties as they were styled in the trial court, *i. e.,* "plaintiffs" and "defendants".

I. *Registration Fee.* Dowell's complaint—as finally amended—alleged that Smith, as Superintendent of Schools, was requiring that each patron of the school pay a registration fee for the child of such patron attending school. The complaint alleged this registration fee to be unconstitutional. It was conceded that even though Dowell was a taxpayer in the district, nevertheless, he had no children in the school and had not been affected by any such registration fee requirement. Therefore, as to Dowell, a demurrer was properly sustained, insofar as

the registration fee matter was concerned. In *Lienhart* v. *Bruton,* 207 Ark. 536, 181 S. W. 2d 468, we held that a litigant could not question the validity of a statute unless he brought himself within the class affected by it. In the opinion, Mr. Justice Knox said:

"It is well settled that a litigant can question a statute's validity only when and insofar as it is being, or is about to be, applied to his disadvantage. *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 91; *Arkansas Power & Light Co.* v. *West Memphis Power & Water Co.,* 184 Ark. 206, 41 S. W. 2d 755; *Ferguson* v. *Hudson,* 143 Ark. 187, 220 S. W. 306."

We think the rationale of the foregoing holding applies to the situation of Dowell in the case at bar, insofar as concerned the registration fee.

Messrs. Burnett and Walker adopted Dowell's allegation about the registration fee; and Burnett and Walker each had a child in the school. Here are their allegations in this regard:

"They state that they have suffered great humiliation and are still being humiliated by the illegal exactions sponsored by R. L. Smith, Superintendent of the Harrison Public School by demanding of them that they pay registration fees for their children to enter the public free school; and further state that their children suffered great humiliation by not being delivered books for three days, while children upon which registration fees were paid received their books on the first day of school.

"Plaintiffs further state the defendant, R. L. Smith, will continue to make such illegal exactions for such registration fees at the beginning of the second semester term if he is not restrained from making such illegal demands upon them and all others."

It was the contention of the defendants that the registration fee was wholly voluntary, and was collected to enable the school to obtain $7,000 or $8,000 additional funds thought to be necessary for the running of the school for the full term. But the facts were never de-

veloped. When Burnett and Walker admitted to the Court that neither of them had paid the registration fee, and that their children had nevertheless attended school and received books the same as all other pupils, the trial court held that the registration fee issue passed entirely out of the case. Due to the fact that the appellees concede that the registration fee has been discontinued and offer of refunds made, we are affirming the decree—not on the basis advanced by the trial court, but *because the registration fee has ceased.*

We think that it is well to mention that no such registration fee can be required in the public schools of Arkansas. Our Constitution[1] says:

"Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction."

Some of the cases involving this provision are: *Dickinson* v. *Edmondson,* 120 Ark. 80, 178 S. W. 930, Ann. Cas. 1917C, 913; *Krause* v. *Thompson,* 138 Ark. 571, 211 S. W. 925; *Special School District No. 65* v. *Bangs,* 144 Ark. 34, 211 S. W. 1060.

In the case last cited, the Legislature had passed a law permitting a special school district in Logan County to charge tuition; and the Act was held unconstitutional by this Court, as being in conflict with Article 14, § 1, which guarantees that instruction be "gratuitous".

In *Burrow* v. *Pocahontas School District,* 190 Ark. 563, 79 S. W. 2d 1010, the school district did not have sufficient money to run a free school for the full term; so the school district ran the free school for as long as it could, and then followed Act 169 of 1931 to permit the use of the buildings by teachers for the purpose of operating a tuition school. Such procedure was sustained. The distinction is, that as long as a public school is operated as such, then there must be "gratuitous instruc-

---

[1] Art. 14, § 1.

tion'', as stated in the Constitution; and a school district cannot by indirection—such as a registration fee—violate the clear spirit and plain wording of the Constitution. But, because, as previously mentioned, the registration fee has been abandoned in this case, we affirm the Chancery Decree on this point.

II. *Act No. 278 1951.* Dowell alleged that the School District was paying to its Superintendent, R. L. Smith, and to other teachers in the schools ''salaries in excess of the amounts fixed by law''; and the law claimed to be violated was ''the provision of Act 278 of the Acts of the General Assembly of 1951''. The Chancery Court was correct in sustaining a demurrer to that portion of the said complaint containing such allegations as related to Act 278 of 1951. Such Act does not fix the *maximum* salaries that may be paid school teachers; rather the Act prescribes—*inter alia*—a method for determining the *minimum* school budget.

III. *School Director's Oath Of Office.* Dowell alleged that two of the School Directors (Messrs. Garrison and Milburn) had been interested in the private sale of supplies to the School District; and Dowell sought an injunction to prevent further sales and also prayed for the return to the District of all moneys received by each such director. The Chancery Court overruled the demurrer to Dowell's complaint as regarding these matters; and this phase of the case was tried on its merits. The decree (1) enjoined the directors from having any future private financial dealings with the School District; but (2) refused to adjudge return of money to the District from past transactions. Dowell has appealed from the latter portion of the said decree.

The Chancery Court was correct in both particulars. Even though the two school directors had been favoring the district in prices, etc., nevertheless they should not deal privately with the district. The oath of office of School Directors—as prescribed by § 80-505 Ark. Stats. —says in part:

''. . . I will not be interested, directly or indirectly, in any contract made by the District of which I

am a Director, except that said contract be for materials bought on open, competitive bid and let to the lowest bidder. . . .''

In the light of the quoted language, it is clear that no school director should make private sales of supplies to the School District; and the Chancery Court was correct in its ruling in this regard.

But when we examine the evidence to see the nature of the dealings in the case at bar, we see that no unfair advantage was taken of the School District in any particular, and that the School District received a fair return in all the transactions concerned:

a) As regards Garrison, the allegation was that the District had issued him a warrant for $26. It was established without contradiction that some workmen had been doing some duly authorized repair work on the school property; that their labor amounted to $26; that when these men completed the work they wanted their money; that the school office was closed; that Mr. Garrison, as an act of kindness to the workers, gave them $26 out of his own funds; that the next day he turned in their bills to the School District, and received a warrant to himself for the same amount he paid the workmen. The foregoing is the entire extent of Garrison's ''dealings'' with the School District. Certainly the District received *quantum meruit* for the $26 it paid Garrison.

b) Milburn's dealings took another form. He was interested in a wholesale grocer company, and such company sold the School District supplies at wholesale cost. It was established, without contradiction, not only that the District received every item for which it paid the wholesale grocer company, but also that the District saved hundreds of dollars through Milburn's willingness to have his wholesale grocer company forego profits in dealing with the School District.

The said Directors assumed the burden of proof, and established conclusively that the District received full fair value from the aforesaid dealings. The case at bar, on this point, is ruled by *Smith* v. *Dandridge,* 98 Ark. 38,

135 S. W. 800, 34 L. R. A., N. S. 129, Ann. Cas. 1912D, 1130. See, also, *Revis* v. *Harris*, 219 Ark. 586, 243 S. W. 2d 747. The District received full benefits from the questioned dealings; and there was no "excess of selling price over fair market price." Therefore, the Chancery Court was correct in refusing Dowell's plea for a return of money to the District.

Affirmed.