MARK BLOCK *v.* BEN ALLEN ET AL

5-4210                                                              411 S. W. 2d 21

Opinion delivered February 6, 1967

*Carl Langston* and *John Langston,* for appellant.

*Robinson, Thornton, McCloy & Young,* for appellee.

CONLEY BYRD, Justice. This litigation arises as a result of the "one man, one vote" decisions of the United States Supreme Court[1], and the case of *Yancey* v. *Faubus,* 238 F. Supp. 290 (E. D. Ark. 1965). Appellant

[1]"The reapportionment was directed under the authority of several cases, decided by the United States Supreme Court, *viz., Baker* v. *Carr,* 369 U. S. 186, decided in 1962, and the following cases, decided in 1964: *Reynolds* v. *Sims,* 377 U. S. 533; *WMCA, Inc.* v. *Lomenzo,* 377 U. S. 633; *Maryland Committee for Fair Representation* v. *Tawes,* 377 U. S. 656; *Davis* v. *Mann,* 377 U. S. 678; *Roman* v. *Sincock,* 377 U. S. 695; *Lucas* v. *Colorado General Assembly,* 377 U. S. 713." *Faubus* v. *Kinney,* 239 Ark. 444, Footnote 2.

Mark Block, a qualified voter, has brought this declaratory judgment action against the five Senators of the eighteenth senatorial district to determine whether the Senate must be divided into two classes by lot in accordance with Section 6 of Amendment 23 to the Constitution of the State of Arkansas. Appellees, Ben Allen, Max Howell, Dan Sprick, Joe Ford and Oscar Alagood, being the five Senators of the eighteenth senatorial district, filed a demurrer to the complaint which the trial court sustained.

In sustaining the demurrer, the trial court held that Amendment 23, Section 6, the Senate must be divided of Arkansas was not applicable. While we agree that the demurrer should have been sustained, we do not adopt the theory of the trial court.

Appellant contends that the apportionment made by The Board of Apportionment following the cases of *Yancey* v. *Faubus, supra,* and *Faubus* v. *Kinney,* 239 Ark. 443, 389 S. W. 2d 887 (1965), is but an apportionment following the 1960 federal census, and that under Amendment 23, Section 6, the Senate must be divided into two classes by lot. Appellant's theory is that Amendment 45[2] has been voided in its entirety by the "one man, one vote" decisions, since the sole purpose of Amendment 45 was to freeze the senatorial apportionment existing at the time of its adoption in 1956. Appellees first take the position that Amendment 45 is controlling and that under that amendment a Senator is elected for a term of four years. For their alternative position, appellees contend that even if we should decide that Amendment 23 is the controlling law, by virtue of the provisions of Section 4 thereof the Senate will not be required to divide itself into two classes by lot until after an apportionment is made following a federal census.

[2]Amendments 23 and 45 are set out in full as an appendix to this opinion.

The historical background out of which this problem arose is hereinafter set out to give a better understanding of the problem involved.

The 1874 Constitution of Arkansas, Art. VIII, § 2, provided that the legislature should from time to time divide the state into convenient senatorial districts, having not more than 35 nor less than 30 Senators. Article V, § 3 provided that at the first session the Senators should divide themselves into two classes by lot, in which case the first class would hold office for two years only but thereafter all Senators would be elected for four-year terms.

In 1936, Amendment 23 to the Constitution of Arkansas was adopted. This amendment, providing for 35 Senators, set up a Board of Apportionment, consisting of the governor, secretary of state, and attorney general. The Board of Apportionment had the imperative duty to make apportionment of the Representatives and Senators in accordance with population as shown by the federal census within 90 days after January 1, 1937, and thereafter on or before February 1 immediately following each federal census. Section 6 of this amendment provided that at the next general election following any such apportionment, the Senators and Representatives should be elected in accordance with the apportionment, and furthermore, that the Senate at the first regular session succeeding any apportionment so made "...shall be divided into two classes by lot, eighteen of whom shall serve for a period of two years and the remaining seventeen for four years, after which all shall be elected for four years until the next apportionment hereunder." This amendment also prohibited the division of a county in the formation of senatorial districts.

As far as the problem here is concerned, Amendment 23 was before this court twice following the 1940 decennial census. No change was made in any senatorial district following the 1940 census, and in *Bailey* v. *Abington*, 201 Ark. 1072, 148 S. W. 2d 176 (1941), and *Butler*

v. *Democratic State Comm.*, 204 Ark. 14, 160 S. W. 2d
494 (1942), we held that where no change was made in
the geographical boundaries of any senatorial district,
it was not necessary to elect an entirely new Senate nor
for the Senate to divide itself into two classes by lot
as provided in Section 6 of the amendment. We there
held, however, that if there was any change in any sen-
atorial district following a decennial census, an entirely
new Senate must be elected at the next general election
and that at the first regular session following such elec-
tion it would be necessary for the Senate to divide
itself into two classes by lot as provided in Amendment
23, Section 6.

Following the 1950 decennial census, senatorial ap-
portionment was again before this court in *Smith* v.
*Board of Apportionment*, 219 Ark. 611, 243 S. W. 2d
755 (1951), and *Pickens* v. *Board of Apportionment*, 220
Ark. 145, 246 S. W. 2d 556 (1952). These two cases were
direct appeals from the action of The Board of Appor-
tionment pursuant to Amendment 23, Section 5, which
confers original jurisdiction on this court in such mat-
ters.

The 1950 reapportionment and the subsequent divi-
sion of the Senate into two classes by lot, for the purpose
of the two- and four-year term provisions of Section 6
of Amendment 23, were not popular with members of
the Senate. The Senators who ostensibly were elected
to a four-year term in 1950, and some whose districts
were not affected, found themselves running for office
again in 1952, and some of them subsequently found
themselves running for office again in 1954 because of
the ''division into two classes by lot'' required by Sec-
tion 6 of the amendment.

In 1956 the problem of apportionment was tempo-
rarily solved by the passage of Amendment 45 to the
Constitution of Arkansas. By this amendment the sen-
atorial districts were frozen in the manner set out in
*Pickens* v. *Board of Apportionment, supra,* and the Sen-

ate was removed from the jurisdiction of The Board of Apportionment. Following the "one man, one vote" decisions of the United States Supreme Court, that portion of Amendment 45 which froze the senatorial districts was declared void by a three-judge federal court in *Yancey* v. *Faubus, supra.*

Since the "one man, one vote" decisions voided so many sections of our Constitution, the decision by this court in *Faubus* v. *Kinney, supra,* was expedited through the courts to get a judicial determination to see if the portions of Amendment 45, which established 100 members in the House of Representatives and 35 members in the Senate, were still valid and, if so, whether the apportionment ordered by the federal court in *Yancey* v. *Faubus, supra,* should be made by the legislature or by The Board of Apportionment. We there held that the portions of Amendment 45 which provided for 100 members in the House of Representatives and 35 members in the Senate were still valid and that The Board of Apportionment set up thereunder was the proper body to reapportion the legislature as directed by the federal court in *Yancey* v. *Faubus, supra.*

Following *Faubus* v. *Kinney, supra,* The Board of Apportionment, pursuant to the directions of *Yancey* v. *Faubus, supra,* reapportioned the state upon the basis of "one man, one vote," but in doing so left unaffected the districts of nine Senators who had ostensibly been elected to a four-year term in 1964. In *Catlett* v. *Jones,* 240 Ark. 101, 398 S. W. 2d 229 (1966), we held that these nine Senators could serve out the remainder of their four-year terms without standing for re-election in 1966.

While there is logic and apparent merit in appellees' contention that we cannot hold Section 6 of Amendment 23 applicable at this session if we follow our previous decisions— *i. e., Bailey, Butler* and *Catlett, supra* —we do not at this time find ourselves in a position to make a final determination upon the merits. There is

an obvious defect in the parties defendant, since only five members of the Senate are made parties to this declaratory judgment action. See Ark. Stat. Ann. § 34-2510 (Repl. 1962), which provides as follows:

> *"Parties.*—When the declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . [Acts 1953, No. 274, § 10, p. 802.]"

Consequently, the decree of the trial court will be affirmed upon the ground that the demurrer should have been sustained because of the defect in the parties defendant.

The gravity of this defect is pointed up by reason of the fact that any decision as to these five members could not control the action of the Senate. The constitutional provision sought to be invoked would require action by the Senate, not individual Senators. Thus, no effective relief could have been granted to either party in this case.

Affirmed as modified.

Harris, C. J., and Fogleman, J., concur.

## AMENDMENT NO. 23

*Sec. 1. Board of apportionment created—Powers and duties.*—A board to be known as "The Board of Apportionment," consisting of the Governor (who shall be Chairman), the Secretary of State and the Attorney General is hereby created and it shall be its imperative duty to make apportionment of representatives and senators in accordance with the provisions hereof; the action of a majority in each instance shall be deemed the action of said Board.

*Sec. 2. One hundred members in house of representatives.—Apportionment.—*The house of representatives shall consist of one hundred members and each county existing at the time of any apportionment shall have at least one representative; the remaining members shall be equally distributed (as nearly as practicable) among the more populous counties of the State, in accordance with a ratio to be determined by the population of said counties as shown by the Federal census next preceding any apportionment hereunder.

*Sec. 3. Senatorial districts—Thirty-five members of senate.—*The Senate shall consist of thirty-five members. Senatorial districts shall at all times consist of contiguous territory, and no county shall be divided in the formation of such districts. ''The Board of Apportionment'' hereby created shall, from time to time, divide the State into convenient senatorial districts in such manner as that the Senate shall be based upon the inhabitants of the State, each Senator representing, as nearly as practicable, an equal number thereof; each district shall have at least one Senator.

*Sec. 4. Duties of board of apportionment.—*The Board shall make the first apportionment hereunder within ninety days from January 1, 1937; thereafter, on or before February 1 immediately following each Federal census, said Board shall reapportion the State for both Representatives and Senators, and in each instance said Board shall file its report with the Secretary of State, setting forth (a) the basis of population adopted for representatives; (b) the basis for senators; (c) the number of representatives assigned to each county; (d) the counties comprising each senatorial district and the number of senators assigned to each, whereupon, after thirty days from such filing date, the apportionment thus made shall become effective unless proceedings for revision be instituted in the Supreme Court within said period.

*Sec. 5. Mandamus to compel board of apportionment to act.—*Original jurisdiction (to be exercised on

application of any citizens and taxpayer) is hereby vested in the Supreme Court of the State (a) to compel (by mandamus or otherwise) The Board to perform its duties as here directed and (b) to revise any arbitrary action of or abuse of discretion by The Board in making any such apportionment; provided any such application for revision shall be filed with said Court within thirty days after the filing of the report of apportionment by said Board with the Secretary of State; if revised by the Court, a certified copy of its judgment shall be by the clerk thereof forthwith transmitted to the Secretary of State, and thereupon be and become a substitute for the apportionment made by the Board.

*Sec. 6. Election of senators and representatives.* —At the next general election for State and County officers ensuing after any such apportionment, senators and representatives shall be elected in accordance therewith and their respective terms of office shall begin on January 1 next following. At the first regular session succeeding any apportionment so made, the Senate shall be divided into two classes by lot, eighteen of whom shall serve for a period of two years and the remaining seventeen for four years, after which all shall be elected for four years until the next reapportionment hereunder.

## AMENDMENT NO. 45

§ 1. *Board of apportionment created — Powers and duties.*—A Board to be known as "The Board of Apportionment," consisting of the Governor (who shall be Chairman), the Secretary of State and the Attorney General is hereby created and it shall be its imperative duty to make apportionment of representatives in accordance with the provisions hereof; the action of a majority in each instance shall be deemed the action of said board.

§ 2. *One hundred members in house of representatives.—Apportionment.*—The House of Representatives shall consist of one hundred members and each county existing at the time of any apportionment shall

have at least one representative; the remaining members shall be equally distributed (as nearly as practicable) among the more populous counties of the State, in accordance with a ratio to be determined by the population of said counties as shown by the Federal census next preceding any apportionment hereunder.

§ 3. *Senatorial districts—Thirty-five members of senate.*—The Senate shall consist of thirty-five members, Senatorial districts as now constituted and existing, as heretofore directed by the Supreme Court of Arkansas in the case of *Pickens* v. *Board of Apportionment,* 220 Ark. 145, 246 S. W. 2d 556, shall remain the same and the number of Senators from the districts shall not be changed.

§ 4. *Duties of board of apportionment.*—On or before February 1 immediately following each Federal census, said Board shall reapportion the State for Representatives, and in each instance said Board shall file its report with the Secretary of State, setting forth (a) the basis of population adopted for representatives; (b) the number of representatives assigned to each county; whereupon, after 30 days from such filing date, the apportionment thus made shall become effective unless proceedings for revision be instituted in the Supreme Court within said period.

§ 5. *Mandamus to compel board of apportionment to act.*—Original jurisdiction (to be exercised on application of any citizens and taxpayers) is hereby vested in the Supreme Court of this State (a) to compel (by mandamus or otherwise) the Board to perform its duties as here directed and (b) to revise any arbitrary action of or abuse of discretion by the Board in making such apportionment; provided any such application for revision shall be filed with said Court within 30 days after the filing of the report of apportionment by said Board with the Secretary of State; if revised by the Court, a certified copy of its judgment shall be by the clerk thereof forthwith transmitted to the Secretary of State, and

thereupon be and become a substitute for the apportionment made by the Board.

§ 6. *Election of senators and representatives.*— At the next general election for the State and County officers ensuing after any such apportionment, Representatives shall be elected in accordance therewith, Senators shall be elected henceforth according to the apportionment now existing, and their respective terms of office shall begin on January 1 next following. Senators shall be elected for a term of four years at the expiration of their present terms of office.

CARLETON HARRIS, Chief Justice, concurring. I concur in the opinion handed down by the court, since I would also affirm, but for an additional reason. I agree that there is a defect of parties, and, strictly speaking, other members of the Senate should have likewise been named party defendants. However, this matter was mentioned to counsel during oral argument, and I gained the impression, at that time, that the entire Senate was interested, and desired a decision on the merits. The defect of parties is not raised in the briefs.

In *Faubus, Governor* v. *Kinney,* 239 Ark. 443, 389 S. W. 2d 887, we held only those provisions of Amendment 23 to the Constitution of Arkansas invalid, which were in conflict with the Federal Court decision of *Yancey* v. *Faubus,* 238 F. Supp. 290 (E. D. Ark. 1965). The provision, hereafter quoted, of Section 6 of Amendment 23, was not affected in *Faubus* v. *Kinney, supra.* That provision is as follows:

"* * * At the first regular session succeeding any apportionment so made, the Senate shall be divided into two classes by lot, eighteen of whom shall serve for a period of two years and the remaining seventeen for four years, after which all shall be elected for four years until the next reapportionment hereunder."

The words, "any apportionment," refer to the re-apportionment made following the Federal csusus; Section 4 of Amendment 23 provides:

"The Board shall make the first apportionment hereunder within ninety days from January 1, 1937; thereafter, on or before February 1 *immediately following each Federal census* (*my emphasis*), said Board shall reapportion the State for both Representatives and Senators,* * *."

In *Butler* v. *Democratic State Committee*, 204 Ark. 14, 160 S. W. 2d 494, we held that Amendment 23 was intended to apply only to apportionments of the House and Senate made after each Federal decennial census in the state, and further held that, if no change was required in the geographical boundaries of any senatorial district (as a result of an apportionment made pursuant to this census), no drawing of lots for two and four-year terms was necessary, and each Senator would be entitled to serve a four-year term.

Accordingly, it is my view that it would be improper to draw lots for two and four-year terms at the present session of the General Assembly; rather, there is no occasion for a drawing until at least after the 1970 Federal census has been taken.

I therefore agree with the trial court to the extent that Amendment 23 does not require a drawing for terms at this session of the Legislature.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached in this case without any reservation, but I would also affirm the action of the trial court because appellant had no right to be protected or interest sufficient to provide the justiciable controversy necessary for an action such as this, either individually or as a citizen, taxpayer and elector of one senatorial district.

A litigant can question a statute's validity only when and insofar as it is being, or is about to be applied to his disadvantage and a demurrer properly raises this point. *Dowell* v. *School Dist. No. 1*, 220 Ark. 828, 250 S. W. 2d 127; *Arkansas Power & Light Co.* v. *West Memphis Power & Water Co.*, 184 Ark. 206, 41 S. W. 2d 755; *Ferguson* v. *Hudson*, 143 Ark. 187, 220 S. W. 306; *Lienhart* v. *Burton*, 207 Ark. 536, 181 S. W. 2d 468; *Citizens Pipe Line Co.* v. *Twin City Pipe Line Co.*, 178 Ark. 309, 10 S. W. 2d 493; *Connor* v. *Blackwood*, 176 Ark. 139, 2 S. W. 2d 44; *Priest* v. *Mack*, 194 Ark. 788, 109 S. W. 2d 665.

While these authorities have to do with statutes, we apply the same rules to constitutional provisions as we do to statutes when called upon for construction.

If appellant has any litigable right at all, there is no showing of any kind what the *Senate*, as distinguished from five of its members, intends or is about to do in the matter.

If appellant has any litigable rights, they are political rights, not civil or property rights, and were not within the jurisdiction of the chancery court; so the demurrer should have been sustained for that reason. *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S. W. 579; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230; *Davis* v. *Wilson,* 183 Ark. 271, 35 S. W. 2d 1020; *Seabolt* v. *Moses,* 220 Ark. 242, 247 S. W. 2d 24.

Of course, a question of jurisdiction of the subject matter cannot be waived by the parties, can be raised at any time and even if not raised, must be determined by the court. *McCain, Commissioner of Labor* v. *Crossett Lumber Co.,* 206 Ark. 51, 174 S. W. 2d 114.

The declaratory judgment act is not intended to be the vehicle for advisory opinions to persons not having a justiciable controversy with their apparent adversaries by a court having no jurisdiction. It is far better, in

my opinion, that important questions, particularly constitutional ones, be pounded out on the anvil of advocacy by persons whose interests are vitally real, not academic, with all interested parties before the court.