CHEEK v. HALL, SECRETARY OF STATE.

5-24                                    252 S. W. 2d 68

Opinion delivered October 27, 1952.

*Townsend & Townsend,* for appellant.

*Ike Murry,* Attorney General, *Cleveland Holland,* Assistant Attorney General and *Tom Downie,* for appellee.

GRIFFIN SMITH, Chief Justice. As nominee of the republican party appellant tendered to the secretary of state the Treasurer's receipt for his ballot fee as a candidate for senator from the Fifteenth district. The district is entitled to three senators. *Smith* v. *The Board of Apportionment,* 219 Ark. 611, 243 S. W. 2d 755; *Pickens* v. *The Board of Apportionment,* 246 S. W. 2d 556, 220 Ark. 145.

Act 238 of 1943, Ark. Stat's, § 3-213, is a directive to the proper committee to require candidates for the enumerated offices (when two or more nominees are to be selected) to designate in writing a particular position, such as position No. 1, position No. 2, position No. 3, etc. This must be done at the time the party pledge is filed with the secretary of the committee; thereupon selection of the nominee shall be made as in other races. The last sentence of the section reads: "When a candidate has once filed and designated for a certain position he shall not be permitted to thereafter change such position."

We agree with appellant that this statute applies to preferential primaries, but nevertheless it does require candidates to select positions. As nominees the three democrats were certified to the secretary of state in circumstances depriving each of any discretion.

The question is, Did the Secretary of State err in declining to accept Cheek's certificate of nomination when the latter demanded a place on the general election ballot as a candidate at large without selecting the *position* he sought? In other words, is the ballot form controlled in all respects by Act 353 of 1949 or other statutory or constitutional provisions inconsistent with the course pursued by the Secretary of State?

Section 6 of Act 353 requires that every ballot shall contain the name of each candidate who has been nomi-

nated, "or has qualified in accordance with law for each office." The names are to appear in perpendicular columns under the name of each office to be filled. In general elections the county board of election commissioners shall determine by lots at a public meeting the order [or sequence] "in which the names of the respective candidates shall appear on the ballot." [In primary elections this function is performed by the county central committee.] By the name of each candidate in a general election shall be his party designation, or the word "independent" if that status exists.

Section 9 reads: "In all elections, except primary elections, *at the bottom of each list of names for each position or office appearing on the ballot* there shall be a blank line or lines, for possible write-in votes for that position or office. There shall be no write-in votes in primary elections." Section 11 contains this provision: "Opposite the designation of each office there shall appear these words: 'Vote For ..............................' The number of persons required to fill the vacancy in office shall be placed in the blank space, as, 'Justice of the Peace, Vote For Ten.' " The Act was approved March 21, 1949, without the emergency clause.

At the same session in 1949 Act 479 was passed with an attempted emergency clause. It authorizes primary election officials to omit from the ballot the name of a candidate who has qualified "for a particular office or position" if such candidate is unopposed.

Amendment No. 23 to the Constitution created an apportionment board and vested the Supreme Court with supervisory duties. Section 3 of the Amendment limits the senate to 35 members. Either the board of apportionment or the Supreme Court must divide the state into convenient senatorial districts. Under authority of the Amendment this Court, in the Pickens case, created the Fifteenth senatorial district, composed of Pulaski county alone. We said in the Smith case that the basis for apportionment is a district, "but the senators from that district represent all of the people. If this were not true

block voting [in the senate] responsive to area interests would militate against the welfare of the commonwealth as a whole."

There is nothing in the Amendment referring to positions in a district to which more than one senator has been assigned, but the preferential primary election Act of 1943 comprehends an orderly procedure under which nominations may be made with complete fairness to the candidates and without impairing the right or convenience of voters. Responsive to this Court's reapportionment, and in conformity with Act 238, three men were nominated as democratic candidates for senator in the Fifteenth district. Section 6 of the general election law (Act 353 of 1949) obligates election officials to place on the ballot the name of each candidate who has been nominated or has qualified *"in accordance with law for each office."*

It is conceded that three democrats—Howell, Fagan, and Gregory—were nominated, respectively, for positions Nos. 1, 2 and 3. If names are to appear on the ballot "in accordance with law for each office" it is not illogical to say that when by statute these men were required to select positions in the primary, their selection as nominees was according to law, and that the designations may properly follow in the general election. If any disadvantage or prejudice to an opposition candidate could be pointed to a pertinent inquiry would be presented, but we can see none. Certainly a republican or independent candidate has the right to select his opponent, just as appellant did when upon the refusal of Secretary Hall to permit filing without designation of a position, he chose to contend for the first place.

Affirmed.

George Rose Smith, J., dissenting. The majority opinion in this case seems so completely without justification that I find myself hesitant to focus attention upon it by writing a dissenting opinion. Yet I feel so strongly about this case that I cannot let it pass with no word of

protest. All that I will attempt, however, is to state the case for the minority; I see nothing to be gained by a detailed analysis of the majority's views.

The simple question is whether, in a contest in which three State senators are to be chosen, the lone Republican candidate (the appellant) must be shown on the ballot as opposing a particular Democratic nominee or as running at large against the three Democratic nominees.

For sixty years the minority candidate has been required by law to run as a candidate at large in Arkansas. No one questioned his legal right to do so until this year, when the Secretary of State directed this appellant to designate a particular opponent. I find it not surprising that the question was not raised for sixty years, for the statutes have been so explicit that "he that runs may read."

As long ago as 1891 the Legislature gave the exact form of ballot to be used when there are several candidates for the same office:

"For Representative. Vote for two.

John Doe, Dem.
Richard Roe, Dem.
Hiram Smith, Ind.
Henry Jones, Ind.
William Carter, Rep.

Nathan Hardy, Rep." (Ark. Stats., 1947, § 3-812.)

This law, which required candidates to run as a field and not by position, remained upon the statute books until 1949. In that year certain revisions were made in the election laws, but the substance of § 3-812 was carried forward into the new law. By Act 353 of 1949 (Ark. Stats., § 3-823) the Legislature directed that "The names of candidates shall be listed in a perpendicular column under the name of each office to be filled." Going even farther, this Act explicitly commanded: "Opposite the designation of each office there shall appear these words: 'Vote for ............' The number of persons required to fill the vacancy

in office shall be placed in the blank space, as 'Justice of the Peace. Vote for 10.' '' § 3-828.

It is this phrase, ''Vote for 10,'' that conclusively demonstrates the legislative intention that candidates must run as a field. For if they run by position, how could the voter ever vote for ten? Obviously he could not. When the candidates run by position the elector must vote for one and only one; he cannot vote for ten or any other plural number. Thus for sixty years the Legislature has declared, as plainly as the English language permits, that in a general election the nominees are to run at large and not by position.

How, then, did the Secretary of State fall into the error of supposing that the law required the appellant to specify a position on the ballot? The answer is that this officer inadvertently confused the primary election law with the general election law.

Until the adoption of Amendment 29 the Constitution made no distinction between a primary election and a general election. In both instances the successful candidate needed only a plurality of the votes, not a majority. But Amendment 29 changed the rule as to primaries, though not as to general elections, by requiring that a candidate for nomination in a party primary must receive ''a majority of all the votes cast for candidates for the office.''

It soon became apparent that this requirement of Amendment 29 was not adapted to the existing practice by which candidates ran at large against one another. For under that system it may be impossible, without a separate tabulation, to tell whether a candidate has received ''a majority of all the votes cast for candidates for the office.'' In the case at bar, for instance, we have three vacancies and four candidates. Suppose the voting showed this result:

| | |
|---|---|
| Candidate A | 9,000 |
| Candidate B | 8,000 |
| Candidate C | 7,000 |
| Candidate D | 3,000 |
| | 27,000 |

Which candidates have received a majority of all the votes cast for the office? It is impossible to say. Each elector had the right to vote for three of the four nominees, yet he also had the privilege of voting for only one or two. Ark. Stats., § 3-1006. Hence no one can say how many votes were cast for the office. In the example given it is possible that every elector cast a vote for three candidates. In that case only 9,000 voted for the office, and candidates A, B, and C all received a majority of the total vote. But it is also possible that every elector chose to vote for one nominee only. In that case 27,000 people voted for the office, and not a single candidate received a majority.

From this example it is evident that the former system of running at large was not suitable for primary elections after the adoption of Amendment 29. Hence the Legislature in 1943 quite logically required candidates to run by position in primary elections; in that way it can easily be determined whether the required majority has been received. But this requirement, and the statute itself, apply only to primaries; they have nothing whatever to do with the general election. There is not one syllable in the general election law to indicate that a candidate must run by position; on the contrary, the law provides now, as it has for sixty years, that candidates are to run at large in a general election. The opposite view simply means that when the Legislature in 1943 required candidates to run by position in primary elections, the General Assembly not only repealed the 1891 Act but also repealed Act 353, which was not passed until six years later. For these reasons I think the decree should be reversed.

HOLT and WARD, JJ., join in this dissent.