John F. WELLS, Individually, et al *v.*
Frank WHITE, Governor, et al

81-160                                      623 S.W. 2d 187

Supreme Court of Arkansas
Opinion delivered November 2, 1981
[Rehearing denied November 23, 1981.]

198

*James F. Lane,* for petitioners.

*Steve Clark,* Atty. Gen., by: *R. B. Friedlander,* Asst. Atty. Gen., for respondents.

JOHN I. PURTLE, Justice. This is an original action in the Supreme Court of Arkansas for a Writ of Mandamus

directing the Board of Apportionment of the State of Arkansas, and its members individually, to redistrict the legislature in a manner whereby no county lines will be crossed in the formation of the various districts. Petitioners rely primarily upon Amendment 45 to the Constitution of Arkansas which requires the House of Representatives to be apportioned in a manner giving each county at least one representative. Amendment 45 requires that the Senate be composed of 35 members and that the senatorial districts be constituted in a manner directed by the Supreme Court of Arkansas in the case of *Pickens* v. *Board of Apportionment,* 220 Ark. 145, 246 S.W. 2d 556 (1952). Petitioners further rely on Amendment 23 to the Constitution of the State of Arkansas as well as Articles 8 and 13 of the original Arkansas Constitution of 1874. Additionally, petitioners urge that Amendment 55 relates to this subject inasmuch as it guarantees to each county a degree of self-government through the recognition of local legislative authority. The respondents resist the petition on the ground that the many decisions of the Supreme Court of the United States hold that the equal protection clause of the Fourteenth Amendment to the Constitution of the United States requires the legislature to be apportioned, as nearly as possible, on the one-man one-vote theory as set out in *Reynolds* v. *Sims*, 377 U.S. 533 (1964).

We think the argument of the respondents must prevail for the reasons stated below.

We state in the beginning that Sections 2 and 3 of Amendment 45 have been held unconstitutional insofar as the boundary lines of the representative districts are concerned. *Yancey* v. *Faubus*, 238 Fed. Supp. 290 (1965), and *Faubus, Governor* v. *Kinney*, 239 Ark. 443, 389 S.W. 2d 887 (1965). These decisions did not change the number of representatives and senators but merely changed the manner in which the various districts were constituted. Even if we considered both Section 3 and 4 of Amendment 45 to be entirely unconstitutional, we would fall back then upon Amendment 23 to the Constitution of the State of Arkansas. Sections 2 and 3 of Amendment 23 also provide that each county shall have at least one representative and that the

senatorial districts shall not divide any county into separate districts. Therefore, Amendment 23, as it relates to the boundaries of the various districts is likewise unconstitutional in that it violates the principle of one-man one-vote. The original Article 8 of the Arkansas Constitution of 1874 provided for 100 members in the House of Representatives and 35 members in the Senate. This article provided the same as Amendments 23 and 45 that of the 100 representatives one must be elected from each county and that the senatorial districts could not be constituted in a manner to divide a county into separate districts. Likewise, Article 8 has the same infirmities as do Amendments 23 and 45.

Although a number of decisions have held that it was proper for the reapportionment authority to consider county and district lines in the formation of reapportionment plans, the cases still hold that the paramount consideration is the numerical equality of the districts. *Mahan* v. *Howell*, 410 U.S. 315 (1973). The central theme of all the United States Supreme Court decisions reviewed pertaining to reapportionment of state legislatures is that there must be a good faith effort to construct the districts in a manner as nearly as possible of equal population.

The latest decision on this subject involves the 1981 reapportionment of the Virginia legislature. The three-judge federal district court held in *Cosner* v. *Dalton*, 522 F. Supp. 350 (D. Va. 1981), that *Reynolds,* supra, is still the standard by which reapportionment plans are measured. The district court in *Cosner* held the present Virginia plan to be unconstitutional on its face. Although the case is on appeal to the United States Supreme Court, we are of the opinion that *Cosner* reflects the present attitude of the federal courts toward the problem of reapportionment of state legislatures. The above decision quoted *Chapman* v. *Meier*, 420 U.S. 1 (1975), as follows:

> Unless there are persuasive justifications, a court-ordered reapportionment plan of a state legislature must avoid use of multi-member districts, and, as well, must ordinarily achieve the goal of population equality of *de minimus* variation.

The court further held that plans departing from such standards must articulate precisely why single member districts were not adopted. A review of the cases on this subject would indicate that the first consideration is that of equal population districts. The second guideline is the observation of local subdivision entities. A third guideline is that the reapportionment authority avoid multi-member districts whenever possible. Also, it is proper to consider existing legislative districts, communities of interest, natural boundaries, incumbency and geographic interests.

The 1981 Virginia plan was struck down as facially unconstitutional because the deviation among the populations of the districts exceeds the limits of toleration authorized by the equal protection clause.

We do not have before us the question of whether the population of the various districts violates the equal protection clause as mandated by the federal courts. The only matter for consideration before this court is whether county boundary lines may be traversed in the formation of legislative and senatorial districts. The answer to the question is that the Board of Apportionment may cross county lines in the formation of the districts whenever it is necessary to comply with the Fourteenth Amendment to the Constitution of the United States. Some counties in Arkansas have a population of less than 7,000 and other counties have a population well in excess of 90,000. Therefore, without any examination of the numerical numbers in the present plan of reapportionment, we must say that it is obviously necessary to deviate from county lines in order to achieve anything in the arena of equal population among the districts. Therefore, we must deny the petition.

Writ denied.