Thomas B. HARVEY v. Bill CLINTON, Governor of the State of Arkansas, et al.

91-346                                          826 S.W.2d 236

Supreme Court of Arkansas
Opinion delivered March 9, 1992

*Karr, Hutchinson & Stubblefield*, by: *Charles Karr* and *W. Asa Hutchinson*, for petitioner.

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Asst. Att'y Gen., for respondent.

ROBERT H. DUDLEY, Justice. The Board of Apportionment, which is composed of the Governor, the Secretary of State, and the Attorney General, has the "imperative duty" to make apportionment of the House of Representatives after each federal decennial census. Ark. Const. art. 8, § 1. The House shall consist of one hundred (100) members, with one being apportioned to each of the seventy-five (75) counties and the remaining twenty-five (25) to be apportioned among the more populous counties. *Id*. at § 2. The part of Section 2 that provides each county is entitled to one representative violates the Equal Protection Clause of the Fourteenth Amendment's principle of one-man, one-vote. *Wells* v. *White*, 274 Ark. 197, 623 S.W.2d 187 (1981), *cert. denied*, 456 U.S. 906 (1982). The fact that the one part of the section is unconstitutional does not affect the constitutionality of the provision fixing the number of House members at one hundred (100). *Faubus* v. *Kinney*, 239 Ark. 443, 389 S.W.2d 887 (1965). Thus, after each federal decennial census the Board must apportion the one hundred (100) members to achieve, as nearly as possible, equal population among the one hundred (100) districts. Another consideration in apportioning the members is insuring some voice to all political subdivisions. *Taylor* v. *Clinton*, 284 Ark. 170, 680 S.W.2d 98 (1984).

After the 1990 decennial census the Board met and, on October 11, 1991, adopted a plan of reapportionment, subject to some final adjustment. By that time, a suit contesting the plan had been filed in federal district court under the federal Voting Rights Act. The three-judge district court had directed that:

> [N]o plan of apportionment . . . adopted [by the Board of Apportionment] may go into effect until sixty (60) days have elapsed from the date of its final adoption by the Board. This Court will retain jurisdiction, within that time period, for the purpose of entertaining any challenge by the plaintiffs in this case to such plan. If no such challenge is forthcoming, the plan may go into effect, subject, however, to the right of any aggrieved citizen to challenge it in an appropriate action at a later time.

*Jeffers* v. *Clinton*, 740 F. Supp. 585, 602 (E.D. Ark. 1990).

The Board and the plaintiffs in the federal district court action stipulated that the October 11th plan was the final plan for purposes of the Voting Rights Act. However, a final report was not filed with the Secretary of State as required by Article 8, Section 4, of the Constitution of Arkansas.

On November 13, 1991, Thomas B. Harvey, the petitioner in this action, filed an original action in this court pursuant to Article 8, Section 5, and sought a Writ of Mandamus to compel the Board to file its report with the Secretary of State. We issued the Writ, and the report, or plan, has been filed. In this original action petitioner asks this court to revise the reapportionment plan for the House of Representatives. We decline to do so.

■ Article 8, Section 1, originally provided that the Legislature would apportion itself. Amendment 23 to the Constitution, adopted at the general election of 1936, amended Article 8 and created the Board of Apportionment. The amendment gives the power of reapportionment to the Board and gives the limited power to this court "to revise any *arbitrary action* of or abuse of discretion by the board in making any such apportionment." Ark. Const. art. 8, § 5 (emphasis supplied). In sum, the people took the power of apportionment from the legislative branch and placed it in the executive branch, subject to judicial review. The judicial branch can revise the reapportionment plan only when the

executive branch has acted arbitrarily. The judicial branch cannot take away the discretion to make a decision which is reposed in the executive branch. Ark. Const. art. 4, § 1.

■ In *Arkansas State Bank Comm'r* v. *Bank of Marvell*, 304 Ark. 602, 604, 804 S.W.2d 692, 693 (1991), we set forth the proper role for the judicial branch in reviewing actions of the executive branch as follows: "Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis." (citing *Partlow* v. *Arkansas State Police Comm'r*, 271 Ark. 351, 609 S.W.2d 23 (1980)). In the context of the present case "arbitrary" means that this court can redraw an apportionment plan only when the report of the Board is not supportable on any lawful rational basis.

■ Preliminarily, the petitioner contends that our case of *Taylor* v. *Clinton*, 284 Ark. 170, 680 S.W.2d 98 (1984), can be interpreted as holding that multi-member districts are unconstitutional per se, and thus, the 1991 apportionment plan is unconstitutional. The case does not so hold. It holds that under the Equal Protection Clause apportionment must be on the basis of population, although some divergence is permissible "incident to the effectuation of a rational state policy." *Id.* at 174, 680 S.W.2d at 99 (quoting *Reynolds* v. *Sims*, 377 U.S. 533 (1964)). Further, nothing in Article 8 of the Arkansas Constitution prohibits multi-member districts, and the Supreme Court of the United States has approved the use of multi-member districts. *Thornburg* v. *Gingles*, 478 U.S. 30 (1986); *White* v. *Register*, 412 U.S. 124 (1973); *Whitcomb* v. *Chavis*, 403 U.S. 124 (1971); *Burns* v. *Richardson*, 385 U.S. 73 (1966); *Fortson* v. *Dorsey*, 379 U.S. 433 (1965).

■■ In another preliminary argument the petitioner contends that in *Wells* v. *White*, 274 Ark. 197, 623 S.W.2d 187(1981), we said that multi-member districts would not be approved by this court unless the Board first articulates the reason, or reasons, single-member districts were not proposed. Again, such was not the holding of the case. The case favorably quotes a federal district court case, *Cosner* v. *Dalton*, 522 F. Supp. 350 (D. Va. 1981) which, in turn, quotes the United States Supreme Court case of *Chapman* v. *Meier*, 420 U.S. 1 (1975), in which the Court said that when federal district courts order

reapportionment of state legislatures they should generally avoid the use of multi-member districts but, when they choose to use multi-member districts, the federal district court should articulate precisely the reason single-member districts were not used. While we would welcome such a practice by the Board, we did not mandate it. In addition, we do not know whether the Board in its final session articulated its reasons for the multi-member districts because the petitioners have not provided us with a transcript of that session. While we will take judicial notice of the filed report, *Butler* v. *Democratic State Committee*, 204 Ark. 14, 160 S.W.2d 494 (1942), we do not take judicial notice of statements made at a hearing. In summary, the use of multi-member districts by the Board has never been held to be unconstitutional per se, and the judicial branch cannot impose its judgment on the executive branch solely because we might favor the use of single-member districts. Thus, neither of the petitioner's preliminary arguments decides the case, and we must reach his main argument.

Petitioner's main argument is that the Board's plan is arbitrary because it provides multi-member districts in Fort Smith, Hot Springs, and Jonesboro, but provides single-member districts for the rest of the State. Before compiling the final plan, the Board determined that it wanted the local communities to express themselves about the plan of apportionment. The Board conducted twenty-five (25) public hearings and received correspondence from citizens throughout the State.

The parties have stipulated that previously only Pulaski County, Crittenden County, Fayetteville, Fort Smith, Hot Springs, and Jonesboro had multi-member districts. They further stipulated that the citizens in Pulaski County and Fayetteville now want single-member districts and that single-member districts were provided for those areas. The parties further stipulated:

> The cities of Fort Smith, Hot Springs, and Jonesboro had been included in multi-member districts in each Plan of Apportionment at least as far back as 1960. The parties believe that multi-member district plans had been in effect in those areas prior to that, but have been unable to verify this fact from information available at the Secretary of State's office.

At its hearing in Fort Smith the Board received testimony both for and against the continued use of a multi-member district, but in Hot Springs and Jonesboro the testimony was almost completely in favor of retaining the multi-member districts. Obviously, the Board thought that those who testified in favor of the retention of the multi-member districts more accurately expressed the views of the local community in the three districts. In general, those who testified stated that their community was one political community of interest that was best served by a multi-member district. Thus, the real issue is, did the Board act arbitrarily by allowing local communities to express whether they favored retaining multi-member districts or changing to single-member districts and then reapportioning in accordance with those wishes? To ask the question is to answer it. Following the wishes of a local community is a most appropriate function of a democratic state government, so long as the wish does not run afoul of a constitutional or statutory mandate. Here, there are no such violations. The population variances are within constitutional standards, and there is no allegation that the multi-member districts would exclude a member of a recognizable political group from holding public office. Accordingly, we hold that the report of the Board of Apportionment was not arbitrary simply because it recognized the preference of local communities.

■ The petitioner additionally argues that the report is arbitrary because, at least in Fort Smith, the plan protects incumbent House members. Both this court and the Supreme Court have stated that avoiding contests between incumbent representatives is a legitimate reapportionment criterion. *Karcher* v. *Daggett*, 462 U.S. 725, 740-741 (1985); *Wells* v. *White*, 274 Ark. 197, 201, 623 S.W.2d 187, 189 (1981). Thus, the argument is without merit.

■ Petitioner also argues that the Board apportioned too few representatives to northwest Arkansas. We summarily reject the argument because the variance is within the constitutional standards set out in *Gaffney* v. *Cummings*, 412 U.S. 735 (1973). We cannot say the plan is arbitrary when it meets constitutional standards.

■ Finally, the opening date for filing for the office of Representative of the various districts is only a few days away.

This decision must be made effective immediately so that the election officials and the prospective candidates can finalize their plans. Accordingly, we order that the mandate in this case be handed down immediately.

Petition denied.

NEWBERN, and BROWN, JJ., concur in this opinion.

ROBERT L. BROWN, Justice, concurring. I concur in the decision with some reservations.

This petition presents us with a discrepancy in treatment in the Plan apportioning legislative districts. Under the Plan, of the one hundred legislative districts at issue, only seven are subsumed in multi-number districts. We are asked to revise the Plan under the authority granted us by the State Constitution:

> Original jurisdiction . . . is hereby vested in the Supreme Court of the State (a) to compel (by mandamus or otherwise) the board to perform its duties as here directed and (b) to revise any arbitrary action of or abuse of discretion by the board in making such apportionment;
> . . . .

Ark. Const. art. 8, § 5.

Under this section, the sole issue that can be raised before this court, after mandamus, is the arbitrariness of the Plan. No other ground for relief is appropriate. The majority correctly states that our standard for determining arbitrary conduct is the absence of any rational basis to support the conduct. This court has previously endorsed, at least by dictum, community interest, incumbency, and geographic interests, among others, as bases for establishing legislative districts. *See, e.g., Wells* v. *White,* 274 Ark. 197, 623 S.W.2d 187 (1981). All three bases exist in this case.

Community interest, though, is only a legitimate basis where sentiment is effectively gauged. In this instance, the adequacy of notice of the public hearings in the three areas, and particularly at Fort Smith, has been called into question. The Stipulation of Facts agreed to by the parties states:

> 12. A staff hearing was held at the Chamber of

Commerce Building in Fort Smith beginning at 9:00 a.m. on Monday, June 17, 1991. Lack of adequate notice was noted by participants at many of the hearings, and, specifically, no advance notice of the hearing in Fort Smith appeared in the local newspaper.

This is all this court has before it as a record on this essential procedural point. Other means of effecting notice may have been implemented; we simply cannot tell due to the paucity of information before us. Neither do we know whether 9:00 a.m. on a Monday morning was a convenient time for the various concerned interests to appear. The critical importance of giving full and effective notice of public hearings to be held at a convenient time goes without saying. This is particularly so where a change in legislative representation is at issue and where there is community sentiment on both sides of the issue. Here, community sentiment was divided according to the Stipulation:

24. The Board of Apportionment received testimony at its hearings both in favor of and against the continued use of multi-member districts in Fort Smith, Jonesboro, Hot Springs, and elsewhere. . . . The Board of Apportionment also received correspondence both in favor of and opposed to a continuation of multi-member districts in those areas. . . .

My doubts are grave about the effectiveness of the notice, at least in Ft. Smith, but based on the limited record before this court, I cannot conclude that the Board was arbitrary in assessing community attitudes in these three cities.

One other matter bears mentioning. The majority relies on incumbent residency as a legitimate criterion supporting the three multi-member districts. This court has referred to incumbency as a factor that may be considered in establishing legislative districts in *Wells* v. *White, supra*, as indicated above. Yet, the *Wells* case concerned a mandamus action to prevent formation of legislative districts that crossed county lines — not whether multi-member districts should be retained in a few areas. Incumbency is a dubious criterion to use when deciding whether single-member districts or multi-member districts should be employed and seems largely irrelevant to the issue. Other considerations should predominate in that analysis, including

community interest and whether a representative voice will be arbitrarily curtailed for any segment of the population. I disagree with the majority's use of incumbency in deciding this petition.

NEWBERN, J., joins.