Don RILEY, Virginia Kilburn and Susan Woods, Jointly and Severally as Concerned Citizens and Registered Voters of Baxter County *v.* The BAXTER COUNTY ELECTION COMMISSION and Its Members, Thurman Wood, Chairman; Delores Friend, Secretary; and Gail Tornquist, Vice Chairman

92-659                                    843 S.W.2d 831

Supreme Court of Arkansas
Opinion delivered December 14, 1992

*The Law Officers of Christopher O'Hara Carter, P.A.*, by: *Christopher O'Hara Carter*, for appellant.

*Gordon Webb*, Prosecuting Att'y, for appellee.

JACK HOLT, JR., Chief Justice. The issue is whether the trial court erred by ruling in favor of the appellees, the Baxter County Election Commission and its members, with reference to its 1992 apportionment of quorum court districts within the county. We hold that it did not and affirm.

The appellants, Don Riley, Virginia Kilburn, and Susan Woods, registered voters of Baxter County (hereafter "the voters"), opposed a new quorum court redistricting plan for Baxter County on the basis that it would result in discrimination since the population varied among the districts by 10.149% and this was greater than the acceptable 10% variance set out by the United States Supreme Court in *Brown* v. *Thomson*, 462 U.S. 835 (1983), and earlier precedent.

Following a hearing, the Baxter County Circuit Court held:

The Court in reviewing the law, and in listening to the

testimony of the Defendants, finds that the Defendants have given acceptable reasons for variance from a strict 10.0% deviation the Court [sic] further finds that the Baxter County Election Commission has substantially complied with the requirements of Ark. Code Ann. § 14-14-401 and therefore the claims of the Plaintiff for non-compliance are dismissed.

■ The general principle underlying this case is that unit voting systems which contain varying populations are unconstitutional *per se* because they deny residents equal representation ensured by the fourteenth amendment. *Gray* v. *Sanders*, 372 U.S. 368 (1963). The overriding objective of apportionment must be substantial equality of population among the various districts. *Reynolds* v. *Sims*, 377 U.S. 533 (1964). We have reiterated the rule that the primary consideration of reapportionment is the numerical equality of the districts, or "fair and effective representation for all citizens." *New York City Bd. of Estimate* v. *Morris*, 489 U.S. 688, 701 (1989) (citing *Reynolds* v. *Sims*, 377 U.S. 533, 565-6 (1964)). *See U.S. Dept. of Commerce* v. *Montana*, 112 S.Ct. 1415 (1992); *Taylor* v. *Clinton*, 284 Ark. 170, 680 S.W.2d 98 (1984); *Wells* v. *White*, 274 Ark. 197, 623 S.W.2d 182 (1981). Since *Baker* v. *Carr*, 369 U.S. 186 (1962), the United States Supreme Court has "consistently adjudicated equal protection claims in the legislative districting context regarding inequalities in population between districts" and has developed and enforced the "one person, one vote" principle. *Davis* v. *Bandemer*, 478 U.S. 109, 118 (1986). Population variation among districts greater than 10% is a prima facie violation of the equal protection clause. *Brown* v. *Thomson*, 462 U.S. 835 (1983); *Connor* v. *Finch*, 431 U.S. 407 (1975); *Chapman* v. *Meier*, 420 U.S. 1 (1975); *Gaffney* v. *Cummings*, 412 U.S. 735 (1973). After such a prima facie case is established, the burden of proof shifts to the defendant to justify the variances.

Although the voters raise five points for our review, there are, in essence, only two issues before us: whether the trial court erred in finding that the Election Commission justified the variance from "the 10% rule" and whether the trial court erred in finding that the Election Commission substantially complied with our code requirements for apportionment.

## I.

DID THE TRIAL COURT ERR IN FINDING THAT THE ELECTION COMMISSION JUSTIFIED THE POPULATION VARIANCE GREATER THAN 10%?

At the hearing, all parties to the case stipulated to the 10.149% variance. The trial court stated that this was a prima facie case of discrimination, and the Election Commission then proceeded to explain why the variance exceeded 10%.

■ There must be some "rational policy" to justify a variance over 10%. *Brown* v. *Thompson, supra.* The testimony at the hearing revealed that the Election Commission had requested and received from the Attorney General the 10% variance guidelines in setting up quorum court districts, the Commission held several meetings, and the Commission sought to keep to the old district lines as much as possible to avoid inconveniencing the voters. One Commission member testified that the overriding principle they followed was equal representation. From maps with the new Decennial Census numbers, they took the total population and divided by eleven, the number of districts to be apportioned. The districts with population already closest to that number were kept the same, and the others were slightly modified, taking geography into account, to reach parity. The end result was that two of eleven districts were over the ten percent acceptable variance by four and three voters, respectively. Thus, a systematic approach taken by the Commission reveals a rational policy of redistricting in Baxter County.

Furthermore, the 10.149% variance is only slightly over the acceptable 10% variation. Applying Arkansas law, the Federal District Court for the Eastern District of Arkansas held that a population difference of 10.9% between proposed state Senate districts in Arkansas was not a "discrepancy sufficiently significantly to justify rejecting the [Board of Apportionment's] plan . . . [which] represents official State policy." *Jeffers* v. *Clinton,* 756 F. Supp. 1195, 1201 (E.D. Ark. 1990), *aff'd* 111 S.Ct. 662 (1991).

We cannot say that the trial court erred in finding that the Commission overcame the prima facie case of discrimination.

## II.

### WAS THE TRIAL COURT'S FINDING THAT THE ELECTION COMMISSION SUBSTANTIALLY COMPLIED WITH THE ARK. CODE ANN. § 14-14-401—407 (1987) CLEARLY ERRONEOUS?

■ Subchapter 4 of Title 14, Section 14 of the Arkansas Code Annotated governs the apportionment of quorum court districts. Ark. Code Ann. § 14-14-401(a) states:

> Each county of the state shall divide its land area into convenient county quorum court districts in a manner and at times prescribed by the General Assembly.

Testimony at the hearing revealed that in drawing the new lines, the Commission started with the 1980 districts and then adjusted their boundaries with their stated goal being population equality and convenience to voters. There is no evidence that the new lines were inconvenient for any voters. *See In re Redistricting Voting Dists. of Ross Township*, 557 A.2d 59 (Pa. Commw. 1989)(redistricting approved where trial court took into account election administration, topography, voter turnout, and convenience).

Next, the number of quorum court districts is determined by a population chart found at Ark. Code Ann. § 14-14-402. In the present case, Baxter County correctly created eleven districts.

The procedure for actually apportioning quorum court districts is found at § 14-14-403, titled "Apportionment of Districts":

> (a) The county board of election commissioners in each county shall be responsible for the apportionment of the county into quorum court districts. Until otherwise changed in the method set forth in this subchapter, the districts of each county shall consist of the territory of the township established by the county board of election commissioners on or before November 3, 1975, pursuant to the provisions of Acts 1975, No. 128 [Repealed]. Thereafter, districts shall be apportioned on or before the first Monday after January 1, 1982, and each ten (10) years thereafter.

(b) All apportionments shall be based on the population of the county as of the last Federal Decennial Census, and the number of districts apportioned shall be equal to the number to which the county is entitled by law.

(c) The provisions of this subchapter shall not be construed to affect the composition of the county committees of the political parties, and the county committee of each political party shall designate the geographic area within the county from which county committeemen shall be selected.

The Election Commission complied with these requirements.

As additional requirements, § 404 orders the State Board of Apportionment to provide the Federal Decennial Census data to the county election commissions; § 405 requires county election commissions to file their plans setting forth boundaries and populations with the county clerk, and requires the plan to be published within fifteen days of that filing; and § 406 provides that a challenge of the plan may be made in the circuit court within thirty days of its publication. *See Stack* v. *Clinton*, 309 Ark. 400, 832 S.W.2d 476 (1992); *Taylor* v. *Clinton*, 284 Ark. 170, 680 S.W.2d 98 (1984); *Goldsby* v. *Brick*, 281 Ark. 58, 661 S.W.2d 368 (1983). The 1990 census data was provided and used in the redistricting, the plan was filed and published, and the voters' present challenge was brought within 30 days.

Lastly, § 407 directs the county clerk to certify the plan and transmit it to the Secretary of State if no one has challenged it within the allotted time period. This has not been done due to the present ongoing challenge.

On review, this court will not reverse a finding of fact by a trial judge unless it is clearly erroneous, and we view the evidence, and all reasonable inferences therefrom, in the light most favorable to the appellee. *Tuthill* v. *Arkansas County Equalization Bd.*, 303 Ark. 387, 797 S.W.2d 439 (1990). In so viewing the evidence, we cannot say the finding of fact that the Election Commission complied with the statutory requirements of Ark. Code Ann. § 14-14-401—407 (1987) was clearly erroneous. Ark. R. Civ. P. 52(a).

For the foregoing reasons, we affirm the trial court.