The Honorable Barbara Horn State Representative P.O. Box 64 F oreman, Arkansas 71836-0064
Dear Representative Horn:
This is in response to your request for an opinion regarding a school board director's business transactions with the school district for which he serves. In your correspondence, you have set forth the factual basis for this request as follows:
 A school board member is making day-to-day retail sales from his business to the school district of which he is an official (Foreman School District). For the period of October 4, 1993 through January 31, 1994, these sales amounted to $2,012.26; district warrants given in payment ranged from $1.42 to $786.40.
With regard to these facts, you have asked for an opinion on the following three questions:
 1. What are the state statutes which currently cover a school district official's business transactions with his district?
 2. What is the interpretation of these statutes as related to regular retail sales?
 3. What is the relevance of a board member's "oath of office" to his regular retail business interests with his district?
With regard to your first question, there are several statutes which may be potentially relevant to your inquiry. Arkansas Code Annotated 6-21-601 603 (Repl. 1993) contain specific prohibitions against a school board member being interested directly or indirectly in certain contracts and purchases made by the school board of which he is a member. Section 6-21-601, in pertinent part, provides:
 (a) It shall be unlawful for any member of. . . . any city, county, district, local, or special board of education having supervision over any public schools of this state. . . . to be interested directly or indirectly in the sale of any books, foods, supplies, commodities, or materials of whatsoever kind or character sold to and purchased by any such state, city, county, district, local, or special board of education of which that person may be a member.
 (b) It shall be unlawful for that person to receive directly or indirectly any pecuniary reward, pay, or emolument for his services or influence in recommending or voting for the purchase of any book, article, commodity, or material to be or having been purchased by the board of which he may be a member. It is the intent and purpose of this section to prevent any member of any board herein named or their agents or employees from directly or indirectly receiving any pecuniary reward or profit from the purchase and sale of any article by the board of which he may be a member.
* * * *
 (e) Any school official herein mentioned who shall violate any of the provisions of this section shall, upon conviction, be deemed guilty of a misdemeanor and fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500) and, in addition to the fine, shall be removed from office by the judge before whom the case may be heard. [Emphasis added.]
See also A.C.A. 6-21-419(b)(1) (Repl. 1993) (stating that it is unlawful for any school board member to be in any way interested in the profits, proceeds, or sale of any school textbooks or other "instructional materials" (defined in A.C.A. 6-21-402) used in the schools under his charge).
Arkansas Code Annotated 6-21-603 also contains prohibitions on a school board member being interested in particular contracts and purchases made by the district of which he is a director and states:
 (a) It shall be unlawful for any member of the school board of any district to be interested directly or indirectly in any contract or purchase made by the district of which he is a director if the contract or purchase is for an amount in excess of five hundred dollars ($500).
 (b) However, this prohibition shall not apply to contracts for materials bought on open competitive bid and let to the lowest bidder. [Emphasis added.]
It is important to note that the prohibitions contained in A.C.A.6-21-601 603, as set forth above, are inapplicable in certain instances. In this regard, A.C.A. 6-13-628 (Repl. 1993) states:
 Whenever any school in a school district in any county of this state having a population of less than six thousand (6,000), according to the most recent federal census, is located in a community in which there is only one (1) store selling school supplies or furnishings, the school district may purchase such supplies or furnishings from the store irrespective of any laws of this state regarding the taking of bids for school purchases or laws prohibiting the selling of supplies and furnishings to any school district by a member of the school district board of directors.
A school board director's oath of office may also potentially cover his business transactions with the school district for which he is a director. The oath of office, as appears at A.C.A.6-13-617(a) (Repl. 1993), states in part:
 I, _______________, do hereby solemnly swear or affirm, that I will support the Constitution of the United States and the Constitution of the State of Arkansas, and that I will not be interested, directly or indirectly, in any contract made by the district of which I am a director, except that said contract be for materials bought on open competitive bid and let to the lowest bidder. . . . [Emphasis added.]
Finally, one other statute, which applies to public officials and state employees in general, should be mentioned with regard to your first question. Arkansas Code Annotated 21-8-304(a) (1987) provides the following:
 No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
[Emphasis added.]
The statutes set forth above are, generally, those which may pertain to a school board director's business transactions with the school district for which he is a director. Of course, the applicability of any of the prohibitions contained in these provisions to a specific situation would depend upon the particular circumstances involved and require a case by case determination.
With regard to your second question, in which you have asked for an interpretation of the statutes set out in response to your first question as they relate to regular retail sales, it is my opinion that A.C.A. 6-21-601(a) (b) would apply to a regular retail sale made by a school board member to the school district for which he is a director if the items of sale are those encompassed within the statutes (i.e. books, foods, supplies, etc.), if the board member is "interested directly or indirectly" in the sale, and if the exceptions contained in A.C.A. 6-13-628, as set forth previously, are inapplicable. With respect to A.C.A. 6-21-603, it is my opinion that the provision would apply to a retail sale if the school board member is "interested directly or indirectly" in the sale, if the sale is for more than $500.00, and if the exceptions contained in A.C.A. 6-13-628 do not apply to the sale. In my opinion, a school board member's ownership of a retail business would result in his being "interested directly or indirectly" in the purchases and sales covered by A.C.A.6-21-601 603. As to A.C.A. 21-8-304(a), it is my opinion that retail sales by a school board director to the district for which he is a director could fall within the scope of "special privileges" if, for instance, customary purchasing procedures were not followed, thus resulting in a "special privilege" to the school board member that would not be available to others. As stated in response to your first question, the applicability of any of the foregoing provisions to a particular retail sale by a school board member to his district will depend upon all of the facts surrounding the sale. Accordingly, I cannot opine as to the appropriateness or inappropriateness of the actions of the particular school board member referred to in your correspondence since determinations of a factual nature are beyond the scope of an attorney general's opinion.
With regard to your third question, it is my opinion that a school board member's oath of office is relevant in determining whether a board member's retail sales to his district are appropriate. The oath of office, which prohibits a board member from being interested directly or indirectly in any contract made by the district of which he is a director (except for those contracts that are for materials which are bought on open competitive bid and let to the lowest bidder), would, in my opinion, apply to regular retail sales made by a school director to his district since every retail sale is technically a "contract." See generally Moss v. Allstate Ins. Co.,29 Ark. App. 33, 776 S.W.2d 831 (1989). Additionally, the Arkansas Supreme Court has interpreted a school board director's oath of office as prohibiting a director from making private sales to his district. See Dowell v. School Dist. No. 1, Boone County, 220 Ark. 828,250 S.W.2d 127 (1952). Whether a school board director has violated his oath of office by making sales to his district will, once again, depend upon all of the attendant circumstances and require a case by case determination.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh